[L.A. No. 30117. In Bank. Oct. 25, 1973.]

GLENN ALLEN MILLS, Petitioner, v.
THE MUNICIPAL COURT FOR THE SAN DIEGO JUDICIAL
DISTRICT OF SAN DIEGO COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

[L.A. No. 30108. In Bank. Oct. 25, 1973.]

THE PEOPLE et al., Petitioners, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
STANLEY ALBERT WICKS, Real Party in Interest.

## COUNSEL

A. Kendall Wood and Hinchy, Witte, Wood & Anderson for Petitioner in No. 30117.

John W. Witt, City Attorney, Stuart H. Swett, Chief Deputy City Attorney, and Derek J. Simmons, Deputy City Attorney, for Petitioners in No. 30108 and for Respondent and for Real Party in Interest in No. 30117.

No appearance for Respondent in No. 30108.

R. Neal Richards, Sheela, Lightner, Hughes & Castro and Howard J. Bechefsky for Real Party in Interest in No. 30108.

## OPINION

**TOBRINER, J.—** It has long been recognized that under the federal Constitution a defendant's plea of guilty to a criminal charge is only valid if it is voluntarily and knowingly made. (See, e.g., *Waley* v. *Johnston* (1942) 316 U.S. 101, 104 [86 L.Ed. 1302, 1304, 62 S.Ct. 964].) In June 1969, the United States Supreme Court elaborated on this principle in *Boykin* v. *Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709], holding that an appellate court may not presume from a "silent record" that a defendant has voluntarily and intelligently waived the constitutional rights which he implicitly relinquishes by entering a plea of guilty. In *Boykin* the court invalidated a criminal conviction resulting from a guilty plea in a proceeding in which the record contained no adequate showing of the defendant's waiver of his rights.

Shortly thereafter, in *In re Tahl* (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449], our court undertook an extensive analysis of the *Boykin* decision and determined that in order to satisfy *Boykin's* requirements a trial court record must explicitly reveal *"on its face"* that before a defendant entered a plea of guilty, he was aware of the three major constitutional rights he was foregoing by pleading guilty—namely, the privilege against self-incrimination, the right to confrontation and the right to a jury trial—and that he knowingly and voluntarily waived such rights.

The defendants in both *Boykin* and *Tahl* had entered pleas of guilty to serious felonies, in each case punishable by death. In the past several years our court has had occasion to clarify the application of the *Boykin-Tahl* doctrine in a variety of contexts,[1] but to date each such application has involved a felony proceeding.

---

[1]See *In re Mosley* (1970) 1 Cal.3d 913 [83 Cal.Rptr. 809, 464 P.2d 473] (*Boykin-Tahl* applicable to submission on a transcript under circumstances in which such submission is tantamount to a plea of guilty); *People* v. *Gallegos* (1971) 4 Cal.3d 242 [93 Cal.Rptr. 229, 481 P.2d 237] (*Mosley* applies prospectively); *People* v. *Rizer* (1971) 5 Cal.3d 35 [95 Cal.Rptr. 23, 484 P.2d 1367] (*Tahl* requirements apply to all post-*Boykin* guilty pleas); *In re Sutherland* (1972) 6 Cal.3d 666 [100 Cal.Rptr.

The two cases before the court in the instant matter present the general question of the applicability of the *Boykin-Tahl* rule in misdemeanor proceedings. Subsumed within this general question are a number of distinct issues: (1) To which misdemeanors, if any, are the *Boykin-Tahl* rules applicable? (2) If the *Boykin-Tahl* doctrine is applicable in this context, must the identical procedures that have been required for felony proceedings be followed in misdemeanor prosecutions? (3) More specifically, if the *Boykin-Tahl* rule is applicable, are misdemeanor defendants precluded from entering a plea of guilty through counsel as authorized by Penal Code section 1429? and (4) Should the rulings on the above issues have retroactive or prospective effect?

All of these issues are presented by the instant cases and we briefly summarize at the outset the conclusions we have reached by virtue of the analysis set forth at length below. First, we have concluded that the rationale of the *Boykin* and *Tahl* decisions applies equally to misdemeanors as to felonies, and that the constitutional principles enunciated in those decisions govern the validity of pleas of guilty in *all* misdemeanor proceedings. Second, past decisions of this court indicate that in misdemeanor proceedings flexible procedures, which take into account the realities of the crowded dockets of municipal and justice courts, are permissible so long as fundamental constitutional rights are not sacrificed; accordingly, we have concluded that the application of the *Boykin-Tahl* doctrine in misdemeanor proceedings need not take the identical form required in felony prosecutions.

Third, we have determined that the constitutional principles embodied in *Boykin* and *Tahl* are not irreconcilable with section 1429 of the Penal Code permitting a misdemeanor defendant to plead guilty through counsel. We shall explain that the protection afforded by these decisions can be satisfied by counsel's presentation of an adequate waiver form, personally completed and signed by the defendant, and by counsel's affirmation that he informed his client of his rights and that his client knowingly and voluntarily waived them. Finally, we have concluded that in view of the essentially prophylactic function of the *Boykin-Tahl* doctrine, and the significant disruptive effect that a retroactive holding might have, our decision should be applied purely prospectively; that is, only to misdemeanor guilty pleas entered after the date of this decision.

---

129, 493 P.2d 857] (*Boykin-Tahl* applicable to guilty pleas entered as a result of plea bargain); *People* v. *Levey* (1973) 8 Cal.3d 648 [105 Cal.Rptr. 516, 504 P.2d 452] (waiver of privilege of self-incrimination necessary in *Mosley* context).

Having summarized our ultimate general legal conclusions, we turn to the specific cases before us. After reviewing the facts of the two proceedings at bar, we shall proceed to the reasoning which has led us to the above conclusions.

1. *The facts of the instant cases.*

(a) *Mills* v. *Municipal Court.*

Petitioner Mills instituted the instant proceeding, seeking to have a misdemeanor drunk driving conviction (Veh. Code, § 23102, subd. (a)), entered in the San Diego Municipal Court on April 27, 1971, set aside as constitutionally invalid under *Boykin* and *Tahl.* Attached to the petition is a certified copy of the trial court record of the challenged proceeding. The record discloses that on February 9, 1971, an attorney, Stephen Frantz, appeared for defendant Mills at arraignment and entered a plea of not guilty. Thereafter, on April 27, 1971, Frantz again appeared for the defendant, withdrew the plea of not guilty, and entered a plea of nolo contendere to the charge. Time for pronouncement of sentence was waived, and on that same date the court imposed a fine of $350, $150 of which was suspended for three years upon several conditions;[2] the record also notes that the court recommended that defendant's driver's license not be suspended. The record, however, contains no indication that the defendant was aware of his constitutional rights or had been advised of such rights by either his counsel or the court, nor does it reveal that defendant knowingly and voluntarily waived those rights by his guilty plea.[3]

---

[2]The conditions of the suspension were that Mills not be arrested driving an automobile with liquor on his breath and that he not violate Penal Code section 367d, or Vehicle Code sections 23102, subdivision (a), and 23103.

[3]In addition to this court record, the present petition includes a verified declaration by petitioner Mills, elaborating somewhat on the facts surrounding the guilty plea. The declaration alleges that Mills was not personally acquainted with his attorney Frantz but was referred to his law offices by a friend, that Mills only spoke to Frantz over the telephone on one occasion, that at that time he informed Frantz of the date he was to appear in court and the nature of the charge against him but not the facts giving rise to the arrest, that Frantz advised him of the fee, told him it would not be necessary for Mills to appear in court until further notice from Frantz, but at no time advised Mills of any of his constitutional rights.

The declaration further alleges that some time thereafter Mills received a letter from Frantz notifying him that a further court hearing would be held on April 27, 1971, and that Mills' presence would be necessary. On April 27, Mills reported to the setting and motion department of the municipal court, where he was met by Frantz who informed Mills that he had reviewed the case and that, in his opinion, Mills should plead "no contest" to the charge. The declaration asserts that at this brief meeting before the court hearing there was no further discussion of the charges, of the elements of the offense involved, of the various pleas or defenses available, or of the consequences of the plea, including the punishment which might be exacted. The

One year later, on May 4, 1972, Mills was convicted a second time of misdemeanor drunk driving and, pursuant to Vehicle Code section 13352, subdivision (c), the Department of Motor Vehicles suspended his driver's license for one year. Thereafter, Mills moved in municipal court to set aside his first conviction, contending it was invalid under *Boykin* and *Tahl;* after a hearing the motion was denied. Mills then petitioned the Superior Court of San Diego County for a writ directing the municipal court to set aside the conviction, but the court denied the writ on the ground that the *Boykin-Tahl* rule was not applicable to misdemeanors.

Mills thereafter sought a writ of mandate from the Court of Appeal, and, because of the importance of the issue presented that court granted the alternative writ and, after briefing and argument, ultimately reversed the superior court decision. The People (real party in interest) then petitioned this court for a hearing, and because of the statewide significance of the issue we granted a hearing.

(b) *People* v. *Superior Court (Wicks)*

Unlike the *Mills* matter, the *Wicks* case does not arise out of an attack on the validity of a prior conviction. Rather, this proceeding presents the somewhat unusual circumstance of a defendant attempting *to require* a trial court to accept a plea of guilty tendered through his counsel.

The *Wicks* litigation commenced with the filing of a criminal complaint in the San Diego Municipal Court, charging Wicks with misdemeanor drunk driving (Veh. Code, § 23102, subd. (a)). On December 21, 1972, Wicks' attorney, R. Neal Richards, appeared in municipal court on behalf of his absent client for the purpose of entering his client's plea of guilty to an amended complaint alleging violation of Penal Code section 367d (driving under the influence).[4] Richards presented to the municipal court

---

declaration also alleges that Mills was never advised of his constitutional rights and did not knowingly and expressly waive them. Pursuant to his attorney's advice, however, petitioner did authorize his attorney to enter the nolo plea on his behalf.

That same day, according to the declaration, Frantz appeared for petitioner and entered a plea of nolo contendere. When the plea was entered, Mills was present in the courtroom but was seated in the spectator area and allegedly could not hear what was being said by the judge or attorneys. He was thereafter informed of the $350 fine ($150 suspended) by the court bailiff and made the requisite payment.

[4]Wicks' "change of plea" form discloses that the plea of guilty was tendered as the result of a plea bargain in which the prosecutor agreed to dismiss the section 23102, subdivision (a) charge—which carries a minimum fine of $250—and to concur in a fine of only $150 for the section 367d charge. The form notes that the additional sanctions of section 23102, including loss of driving privileges if a similar offense is committed within seven years, were to be imposed as conditions of the $150 fine.

a printed "change of plea" form, prepared by the Municipal Court of the San Diego Judicial District, which had been filled out and signed by defendant Wicks.

This "change of plea" form, set out in its entirety in an appendix to this opinion, fully discloses the nature of the charges against the defendant, the potential consequences (including possible sentence) of a plea of guilty, and—most significantly for this case—the various constitutional rights which defendant possessed and which would be relinquished by a plea of guilty. In this regard, the form states that "defendant . . . does declare . . . [8.] [t]hat he has been advised of the following constitutional rights . . . : (a) The right to be tried by a jury; (b) The right to confront and cross-examine all the witnesses against him; (c) The right at the trial to present evidence in his favor and either to testify for himself, or, if he wishes, he may remain silent; (d) The right to a speedy and public trial; (e) The right to have witnesses subpoenaed to testify in his behalf and to obtain all evidence which might exonerate the defendant; (f) The right to have a qualified lawyer defend him at all stages of the proceedings; that said attorney may be of defendant's own choice or shall be court appointed if the defendant is unable to afford counsel."

The form further states that defendant *"does,* except for his right to be represented by an attorney, knowingly and intelligently waive each and every one of his rights as set forth in item 8 above, including: (a) The right to be tried by a jury; (b) The right to confront and to cross-examine all the witnesses against him; (c) The right against self-incrimination."[5] The form contains boxes after each "item" which the defendant is to initial after he reads the item; in the instant case, all such boxes were filled in by defendant's initials.

In addition to initialing the individual items, Wicks signed a statement at the conclusion of the form attesting that: "Defendant has . . . read, discussed and has had explained to him by his attorney each of the above items, and understands same. Defendant has initialed each item as proof thereof." Moreover, the form also includes a statement of the defendant's attorney, declaring that the attorney "personally read, discussed and explained the contents of the . . . declaration" and that he "observed defendant date and sign said declaration"; Richards, Wicks' attorney, had signed this declaration in the form presented to the trial court. Further, upon presenting the form to the court, Richards reaffirmed orally that his

---

[5]The italicized word "does" was written in longhand in a blank space above the printed legend "(does/does not)."

client had personally signed and initialed the form in the attorney's presence; the attorney's statement is reflected in the reporter's transcript.

Despite the apparent completeness of the proffered "change of plea" form, however, the trial court felt constrained to refuse to accept the guilty plea, expressing its doubts—in light of several recent Court of Appeal opinions[6]—as to the propriety of having a plea of guilty entered in the absence of the defendant. The trial court, reasonably taking "a policy that's safe . . . from the Court's viewpoint," believed that it should insist that the defendant be personally present to waive the constitutional rights implicitly extinguished by his guilty plea. On defense counsel's request, however, the court did grant a continuance to permit counsel to seek a writ of mandate.

Thereafter, Wicks filed a petition in the San Diego Superior Court seeking a writ of mandate to compel the municipal court to accept defendant's guilty plea through his attorney, pursuant to Penal Code section 1429. The superior court granted the alternative writ and, after briefing and argument, concluded in a "memorandum of ruling" that, under the circumstances of the instant case, the municipal court should have accepted defendant's plea. The superior court stated: "Reviewing the Change of Plea form in the instant case, the court finds that it is understandable, that it is complete, that it contains a recitation of all of the rights and waivers required by *Boykin-Tahl,* and that its proper use will result in the inclusion in the record of adequate evidence of adherence to the *Boykin-Tahl* principles. The 'proper' use of the form will of course depend upon the circumstances; but it appears to this court that when the form is completely filled out, signed and initialed by the defendant, and when counsel assures the court that he went over the form in detail with the defendant and advised him with reference thereto, and that the defendant signed and initialed the form in the presence of counsel—that under these circumstances, use of the form in lieu of the personal appearance and testimony of the defendant is proper."

In accordance with this reasoning, the court's memorandum of decision indicated its intention to grant the requested writ of mandate. Prior to the issuance of the peremptory writ, however, the San Diego City Attorney filed the instant petition in this court seeking an original writ of mandate. In his petition the city attorney pointed out that a number of courts have recently reached conflicting conclusions as to the propriety of accepting a

---

[6]The municipal court judge specifically referred to the Court of Appeal decision in the *Mills* case, and to the decision in *Cooper* v. *Justice Court* (1972) 28 Cal.App.3d 286 [104 Cal.Rptr. 543] (see fn. 12, *infra*).

guilty plea in a defendant's absence, and asserted that, in view of the large number of misdemeanor guilty pleas entered each day throughout the state, a definitive ruling on the issue from this court was essential. Agreeing with the city attorney's assessment of the importance of obtaining a definitive determination on this question, we exercised our discretion and issued the alternative writ of mandamus. ▇ "[B]y so doing 'we have necessarily determined that there is no adequate remedy in the ordinary course of law and that [this] case is a proper one for the exercise of our original jurisdiction.' . . ." (*San Francisco Unified School Dist.* v. *Johnson* (1971) 3 Cal.3d 937, 945 [92 Cal.Rptr. 309, 479 P.2d 669]; *Randone* v. *Appellate Department* (1971) 5 Cal.3d 536, 543 [96 Cal.Rptr. 709, 488 P.2d 13].)

We now turn to the general legal issues presented.

2. *The principles of Boykin-Tahl are applicable in misdemeanor proceedings.*

The initial legal question before us is whether the *Boykin* and *Tahl* decisions have any application to misdemeanor proceedings. The People, as real party in interest in *Mills,* contend that because both the *Boykin* and *Tahl* cases themselves involved serious felonies—indeed, capital offenses—the holdings of such cases do not extend to misdemeanor prosecutions. Although it is true that these seminal decisions dealt with guilty pleas entered with respect to serious felonies, the constitutional rights safeguarded by both *Boykin* and *Tahl* have never been limited to felony proceedings and, as explained hereafter, we believe that the general rationale of these authorities is as applicable to misdemeanors as to felonies.

In *Boykin,* the United States Supreme Court assayed the consequences resulting from a defendant's plea of guilty, observing that such a plea necessarily forfeits a panoply of constitutional rights, including most prominently the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers. In view of the seriousness of the relinquishment of such rights, and to assure that defendants understand the consequences of their pleas, the *Boykin* court held that whenever a guilty plea is accepted the trial record must affirmatively show that the defendant was aware of his constitutional rights and that such rights had been freely and intelligently waived; *Boykin* made clear that such a "knowing and voluntary" waiver could not be presumed from a "silent record."

In *Tahl,* we articulated in somewhat more detail exactly what a trial record must disclose to demonstrate a valid guilty plea under *Boykin.* We

held: "[T]he record must contain *on its face* direct evidence that the accused was aware, or made aware, of his right to confrontation, to a jury trial, and against self-incrimination, as well as the nature of the charge and the consequences of his plea. Each must be enumerated and responses elicited from the person of the defendant." (Original italics.) (1 Cal.3d at p. 132.)

Although these holdings were rendered in the context of felony prosecutions, their rationale is not limited to that category of cases. ▬▬ ▬ ▬ A misdemeanor defendant no less than a felony defendant relinquishes various constitutional rights by entering a plea of guilty.[7] There is no question, of course, that in misdemeanor proceedings a defendant retains fully both his right to confront his accusers and his privilege against self-incrimination (see, e.g., *Dist. of Columbia* v. *Clawans* (1937) 300 U.S. 617, 630-632 [81 L.Ed. 843, 849-850, 57 S.Ct. 660]; *Argersinger* v. *Hamlin* (1972) 407 U.S. 25, 28 [32 L.Ed.2d 530, 533, 92 S.Ct. 2006]; *Counselman* v. *Hitchcock* (1892) 142 U.S. 547, 563-564 [35 L.Ed. 1110, 1114, 12 S.Ct. 195]); moreover, in this state, every misdemeanor defendant has a right to a trial by jury. (Cal. Const., art. I, § 7; Pen. Code, § 689.)[8]

---

[7]In the *Mills* case, the challenged conviction was based on a plea of nolo contendere, rather than a plea of guilty, but the People make no contention—nor could they properly do so—that this distinction is relevant to the applicability of the *Boykin-Tahl* safeguards. While there is some difference between a "nolo" plea and a guilty plea in terms of the collateral use of such a plea, for purposes of the *Boykin-Tahl* doctrine the two are functional equivalents. (See *In re Gannon* (1972) 26 Cal.App.3d 731, 736-737 [103 Cal.Rptr. 224]; *State* v. *Kristanoff* (1972) 32 Ohio App.2d 218 [61 Ohio Ops.2d 222, 289 N.E.2d 402, 403]; cf. *North Carolina* v. *Alford* (1970) 400 U.S. 25, 37 [27 L.Ed.2d 162, 171, 91 S.Ct. 160]; *In re Mosley* (1970) 1 Cal.3d 913 [83 Cal.Rptr. 809, 464 P.2d 473]. See generally American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Pleas of Guilty (Approved Draft 1968) §§ 1.1, 1.4, 1.5, 1.7.)

[8]Under the federal Constitution, the right to trial by jury is guaranteed only for "non-petty" offenses, involving a potential punishment of more than six months' imprisonment. (See *Baldwin* v. *New York* (1970) 399 U.S. 66, 69 [26 L.Ed.2d 437, 440, 90 S.Ct. 1886].) Thus, a defendant's *federal* constitutional "jury trial" right does not extend to all misdemeanors, but only to those involving a potential of more than six months' incarceration. Since *Boykin* establishes only federal constitutional standards, the People argue that the trial record need only show that a defendant was aware of, and voluntarily and knowingly waived, his right to jury trial in those misdemeanor proceedings which are "non-petty" under federal standards.

While this contention may accurately reflect the demands of the federal Constitution, in California our state Constitution guarantees *every* defendant faced with misdemeanor or felony charges a right to trial by jury. Because a trial record must in any event demonstrate a knowing and voluntary waiver of the right to confrontation and against self-incrimination in *all* misdemeanor cases, we believe it is only sensible that such record should also make clear that the defendant freely and intelligently relinquished his right to a trial by jury. Although not compelled in "petty" cases by

Consequently, the entry of a plea of guilty to a misdemeanor embodies the same waiver of constitutional rights that was present in *Boykin* or *Tahl*. The People have suggested no logical basis for confining the rulings of *Boykin* and *Tahl* to the felony context in which they were enunciated, and we can discern no rational ground for such a distinction.

The People claim, however, that even if we reject their contention that *Boykin* and *Tahl* are *completely* inapplicable to misdemeanor proceedings—as we have done above—we should still hold that the *Boykin-Tahl* rules do not apply to *all* misdemeanor prosecutions but only to those which actually result in the defendant's imprisonment. The People rely on the United States Supreme Court's recent opinion in *Argersinger* v. *Hamlin* (1972) 407 U.S. 25 [32 L.Ed.2d 530, 92 S.Ct. 2006] as authority for drawing the line at cases of "actual imprisonment."

In *Argersinger* the court addressed the question of whether the constitutional guarantee of right to counsel requires a state to afford an attorney to an indigent defendant charged with a "petty" misdemeanor, involving only a 90-day jail sentence. The State of Florida argued that the federal constitutional right to counsel, as enunciated in *Gideon* v. *Wainwright* (1963) 372 U.S. 335 [9 L.Ed.2d 799, 83 S.Ct. 792, 93 A.L.R.2d 733] and its progeny, did not apply to all criminal proceedings, but, like the federal right to trial by jury (see *Baldwin* v. *New York* (1970) 399 U.S. 66 [26 L.Ed.2d 437, 90 S.Ct. 1886]), was instead confined to offenses punishable by more than six months' imprisonment. The *Argersinger* court, noting (1) that the source of the right to counsel—the Sixth Amendment—applied, by its terms, to "all criminal prosecutions" and (2) that the unique historical support for limiting the right to trial by jury to "serious" offenses was not applicable to the right of counsel, rejected the state's proposed limitation and held "that absent a knowing and intelligent waiver, no person *may be imprisoned* for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial." (Italics added; fn. omitted.) (407 U.S. at p. 37 [32 L.Ed.2d at p. 538].)

Emphasizing various passages of the *Argersinger* opinion which indicate that the court's decision is limited only to those misdemeanors which result in actual deprivation of liberty rather than to all misdemeanors,[9] the People

the federal Constitution, we adopt such a requirement for misdemeanor cases pursuant to our supervisory authority over state criminal procedures. (See *People* v. *Vickers* (1972) 8 Cal.3d 451, 461 [105 Cal.Rptr. 305, 503 P.2d 1313]; *People* v. *Cahan* (1955) 44 Cal.2d 434, 442 [282 P.2d 905, 50 A.L.R.2d 513].)

[9]The strongest indication of this limitation appears in the concluding passages of the majority opinion in *Argersinger:* "Under the rule we announce today, every judge

contend that the decision is authority for similarly confining the reach of the *Boykin-Tahl* rule. For a variety of reasons, we cannot agree.

First, the *Argersinger* decision, while clearly passing only on the question of the right to counsel in cases resulting in "actual imprisonment," by no means establishes the "actual imprisonment" line as the definitive threshold of the federal constitutional right to counsel. On the contrary, Justice Powell suggested in his concurring opinion in *Argersinger* that "[t]he thrust of the Court's position indicates . . . that when the decision must be made, the rule will be extended to all petty offense cases except perhaps the most minor traffic violations." (407 U.S. at p. 51 [32 L.Ed.2d at p. 546].) Justice Douglas, writing for the majority, did not refute that assessment but simply stated that since the defendant before the court had been actually sentenced to jail, the court was not required to consider the applicability of the right to counsel "in situations where there is no prospect of imprisonment." (407 U.S. at p. 37 [32 L.Ed.2d 538].) Carefully analyzed, the *Argersinger* decision cannot be read as holding that there is no right to counsel in any misdemeanor case not resulting in imprisonment.

Second, and more importantly, even if *Argersinger* could be said to stand for the proposition that the federal *right to counsel* extends only to instances of actual imprisonment, we cannot understand why it should follow that the rights protected by the *Boykin-Tahl* rule would be similarly limited. As noted above, the constitutional rights with which *Boykin* and *Tahl* are concerned—the privilege against self-incrimination, right to jury trial, and right of confrontation—are, in California, applicable to *all* misdemeanor proceedings, not only those resulting in actual imprisonment. It makes no more sense to adopt blindly the *Argersinger* "right to counsel" limit for the *Boykin-Tahl* rule than it would be to import the federal "trial by jury" standard enunciated in *Baldwin* (see fn. 8, *ante*); rather, since *Boykin* and *Tahl* are aimed at insuring that a defendant is aware of the rights he is waiving by pleading guilty, it is reasonable that those cases should apply to all proceedings in which the rights to be waived are applicable. Thus, simply as a matter of logic, the "actual imprisonment" line suggested by the People has no merit.

will know when the trial of a misdemeanor starts that no imprisonment may be imposed, even though local law permits it, unless the accused is represented by counsel. He will have a measure of the seriousness and gravity of the offense and therefore know when to name a lawyer to represent the accused before the trial starts. [¶] The run of misdemeanors will not be affected by today's ruling. But in those that end up in the actual deprivation of a person's liberty, the accused will receive the benefits of 'the guiding hand of counsel' so necessary when one's liberty is in jeopardy." (407 U.S. at p. 40 [32 L.Ed.2d at p. 540].)

Finally, even as a purely practical matter, we doubt the advisability of utilizing the *Argersinger* "actual imprisonment" standard as a basis for determining when the *Boykin-Tahl* procedure should be applied in California proceedings. As the concurring opinion of Chief Justice Burger in *Argersinger* makes clear (see 407 U.S. at p. 42 [32 L.Ed.2d at pp. 540-541] (Burger, C. J., concurring)), there are significant problems inherent in any procedure which requires a trial judge to attempt to predict at the outset of a criminal prosecution whether or not imprisonment may be an appropriate sanction. Most obvious, perhaps, is the fact that at these early stages it may be improper for the court to have access to the most relevant sentencing material—such as a defendant's prior record—for it will not yet be clear whether the defendant will actually plead guilty or will proceed to trial, perhaps before the court. (See 407 U.S. at p. 42, fn. * [32 L.Ed.2d at p. 541].) Although the incurrence of such difficulties may be thought worthwhile—in terms of both potential state expense and delay—when the question at issue is whether counsel should be appointed, the balance of "practicalities" clearly shifts when the trial court must pursue the difficult predictive inquiry simply to determine whether an explicit record of a defendant's waiver of constitutional rights should be made.

Under the California Constitution, a trial judge must advise a defendant of his right to state-appointed counsel in *all* felony and misdemeanor proceedings whether actual imprisonment is to follow or not (Cal. Const., art. I, § 13; see *In re Smiley* (1967) 66 Cal.2d 606, 615 [58 Cal.Rptr. 579, 427 P.2d 179]), and thus our state trial judges will never be required to make the predictive determination suggested by *Argersinger* unless we adopt the "actual imprisonment" standard in this context. Under these circumstances, we believe that it would be more expedient simply to provide for an adequate record of a defendant's waivers in all felony and misdemeanor cases, rather than to require the trial court first to make a pre-arraignment determination of the potential sentence a misdemeanor defendant might receive, and then to obtain explicit waivers from those who face imprisonment.

■ Thus, on the basis of both the rationale of the *Boykin* and *Tahl* decisions and the practicalities of the situation, we now conclude that the *Boykin-Tahl* requirement of an explicit "on the record" waiver of a defendant's constitutional rights is applicable to the acceptance of all guilty pleas[10]—to both felonies and misdemeanors—whenever the defendant ap-

---

[10]The above analysis is, of course, equally applicable to those misdemeanor proceedings in which a defendant submits his case under circumstances in which such submission is tantamount to a plea of guilty. (See *In re Mosley* (1970) 1 Cal.3d 913, 926 and fn. 10 [83 Cal.Rptr. 809, 464 P.2d 473]; *People* v. *Levey* (1973) 8 Cal.3d 648

pears before the court either in person or by counsel.[11] Two California Court of Appeal decisions have recently reached similar conclusions (*In re Gannon* (1972) 26 Cal.App.3d 731 [103 Cal.Rptr. 224]; *Cooper* v. *Justice Court* (1972) 28 Cal.App.3d 286 [104 Cal.Rptr. 543]),[12] as have several out-of-state cases. (See, e.g., *City of Cleveland* v. *Whipkey* (1972) 29 Ohio App.2d 79 [58 Ohio Ops.2d 86, 278 N.E.2d 374].)

3. *Compliance with the* Boykin-Tahl *requirements in misdemeanor proceedings does not call for the identical procedures that are utilized for felonies.*

We have concluded above that the rationale of the *Boykin-Tahl* doctrine applies generally to pleas of guilty in misdemeanor proceedings. ■ In so holding, however, we do not suggest that procedures utilized in our overcrowded municipal and justice courts must be identical to the procedures presently required in felony prosecutions. As this court has recognized in the past, relevant differences in the misdemeanor and felony contexts will frequently justify a difference in procedures.[13]

[105 Cal.Rptr. 516, 504 P.2d 452].) Thus, in accepting such submissions in misdemeanor cases *in the future,* trial courts should be guided by the principles set out below.

[11]Our holding that the *Boykin-Tahl* rule is applicable to misdemeanor guilty pleas in no way implies that such decisions have any application to the termination of criminal proceedings following the forfeiture of bail. In a variety of contexts, most notably minor traffic offenses, a defendant may choose to forfeit bail rather than appear in court, and in such circumstances the trial judge has discretion to declare the bail forfeited and to order that no further proceedings be had in the case. (E.g., Veh. Code, §§ 40512, 40512.5.) Although for some purposes such forfeiture of bail operates as a "conviction" and may lead to collateral consequences comparable to a guilty plea (see, e.g., Veh. Code, § 13103), we do not believe that the *Boykin* decision was intended to have any application to such bail forfeitures. Although even in such cases it might theoretically be desirable to have a defendant advised of the potential consequences of his action, any rule that would require every traffic violator either to appear in court personally or obtain an attorney to appear for him would be significantly more onerous—to both courts and defendants—than could possibly be justified by the benefits obtained. We do not believe constitutional principles require so bizarre a result. (See American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Pleas of Guilty (Approved Draft 1968) p. 1.)

[12]In *Gannon,* the Court of Appeal overturned a disturbing the peace conviction, entered on a plea of nolo contendere, because the trial court record failed to satisfy the requirements of *Boykin* or *Tahl.* In *Cooper* the Court of Appeal reached a similar conclusion with respect to a plea of guilty to a misdemeanor drunk driving charge.

[13]The Legislature has specifically provided for different procedures in infraction cases, in which incarceration is not an applicable sanction. Misdemeanor procedures apply except that there is no right to jury trial or right to appointed counsel (Pen. Code, §§ 19c and 19d; Stats. 1973, ch. 1162.) Nothing in this opinion is intended to apply to infractions.

The case of *In re Johnson* (1965) 62 Cal.2d 325 [42 Cal.Rptr. 228, 398 P.2d 420] demonstrates this point. In *Johnson,* a convicted misdemeanant challenged as constitutionally inadequate the procedure utilized by the municipal court in both advising him of his right to counsel and in obtaining a waiver of that right. Although the defendant conceded that the municipal court judge had, at the commencement of the proceedings, collectively informed all defendants present in court of their right to counsel, he claimed in effect that only personal advice, addressed to each defendant individually, would satisfy the state constitutional and statutory requirements. Citing "the diverse problems facing our arraignment courts today," the *Johnson* court rejected the defendant's contention and held that the court's collective advice procedure was permissible in the context of that case. (62 Cal.2d at pp. 332-333.)

The *Johnson* court then turned to the adequacy of defendant's waiver of the right to counsel, and once again adverted—this time at greater length—to the practical considerations relevant to determining the adequacy of procedures utilized in municipal court proceedings. After discussing the strict waiver of counsel rule that had been developed in a series of felony cases, the court declared: "Conceivably, a somewhat less stringent rule might be constitutionally permissible in misdemeanor cases. . . . While there can be no impairment of the fundamental constitutional rights of any defendant, however minor his crime, in certain situations there may be a choice of valid ways to implement these rights. . . . For example, probably the vast majority of citizens haled into court on traffic violations share the judge's interest in prompt disposition of their cases, feeling themselves sufficiently inconvenienced by having to make personal appearances in the first place. To require the judge to orally examine each such defendant at length for the purpose of determining his capability of defending himself would seem to be an idle and time-wasting ritual. Compliance with the spirit of the constitutional mandate that an intelligent waiver of counsel must affirmatively appear in the record may be efficiently achieved in such cases in a variety of acceptable ways." (Fn. omitted.) (62 Cal.2d at p. 336.)

The *Johnson* decision thus teaches that in evaluating the procedures utilized in inferior courts for advising defendants of their rights and obtaining "on the record" waivers, the realities of the typical municipal and justice court environment cannot be ignored, and that, so long as the spirit of the constitutional principles are respected, "the convenience of the parties and the court should be given considerable weight." (*Id.,* see *In re Smiley* (1967) 66 Cal.2d 606, 622 [58 Cal.Rptr. 579, 427 P.2d 179].) With these considerations in mind, we proceed to analyze the application of the *Boykin-Tahl* rule in the misdemeanor context.

(a) *Entry of guilty plea through counsel.*

The most obvious difference between the felony and misdemeanor guilty plea context is that in felony proceedings a defendant must be personally present in court to enter his plea (Pen. Code, § 1018), whereas in misdemeanor prosecutions defendants are authorized by statute to plead guilty through counsel. (Pen. Code, § 1429.)[14] Petitioners in the *Wicks* case contend that the provision of section 1429 of the Penal Code, authorizing the entry of a guilty plea in a defendant's absence, is irreconcilable with the *Boykin-Tahl* requirements, and they assert that if *Boykin* and *Tahl* are to be applied to misdemeanors—as we have held—it necessarily follows that defendants can no longer plead guilty through counsel. In support of this position, petitioners point to specific passages in both the *Boykin* and *Tahl* opinions which speak of the trial court's active participation "in canvassing the matter with the accused" (395 U.S. at p. 244 [23 L.Ed.2d at p. 280]) and of "responses elicited from the person of the defendant" (1 Cal.3d at p. 132); such language, petitioners argue, demonstrates that the *Boykin* and *Tahl* courts intended to require that a defendant be personally present when his guilty plea was entered.

The passages of *Boykin* and *Tahl* isolated by petitioners do indicate that those courts contemplated that a defendant's guilty plea would normally be tendered in person. The courts' assumption in this regard, of course, is hardly surprising since *Boykin* and *Tahl* both involved felony proceedings, in which pleas could only be entered by a defendant personally. As we read both *Boykin* and *Tahl,* however, any assumption as to the presence of the defendant was not conceived by either court to constitute a necessary prerequisite to the entry of a valid guilty plea in every context. When viewed as a whole, *Boykin* and *Tahl* do not preclude the state from establishing a procedure, applicable to cases involving less serious offenses, which permits

---

[14]Penal Code section 1429 provides in relevant part: "In the case of a misdemeanor triable in any inferior court the plea of the defendant may be made by said defendant or by his counsel." This provision is merely one of a series of statutory enactments which permit (1) a misdemeanor defendant to appear through counsel at arraignment (Pen. Code, § 977, subd. (a)), (2) a misdemeanor trial to be held in the defendant's absence so long as the court finds that the defendant knew that the trial would be so held (Pen. Code, § 1043, subd. (e)), and (3) a verdict to be received and judgment pronounced in a misdemeanor defendant's absence. (Pen. Code, §§ 1148, 1193, subd. 2.)

Rule 43 of the Federal Rules of Criminal Procedure makes similar options available for misdemeanor defendants in federal proceedings, providing inter alia that "[i]n prosecutions for offenses punishable by fine or by imprisonment for not more than one year or both, the court, with the written consent of the defendant, may permit arraignment, plea, trial and imposition of sentence in the defendant's absence." To our knowledge, no court has yet passed on the question of *Boykin's* effect on this federal rule.

a defendant, at his own option, to appear and plead guilty through counsel, so long as such procedure affords adequate protection to the constitutional interests at stake.

As we have discussed earlier, *Boykin* and *Tahl* are generally aimed at fulfilling two purposes: first, insuring that a defendant is aware of his constitutional rights and has voluntarily and knowingly waived them; and second, insuring that an adequate record of these facts is made so as to facilitate review on appeal or collateral attack. In our view, both of these purposes can be accomplished by something short of requiring the defendant's personal appearance in every case.

The facts of the *Wicks* case provide an excellent illustration. In *Wicks,* the defendant personally completed and signed a document which was drafted both to be understandable to the average layman and to require personal "participation" by the defendant so as to insure that he actually read the form. The form enumerated the various constitutional rights defendant was foregoing by his plea of guilty, advised him of the potential consequences of his plea, and recorded his waiver of the rights. Moreover, the form was signed by his lawyer who attested, both in writing and in open court, that the defendant had personally completed the form and had knowingly and voluntarily waived the various *Boykin-Tahl* rights.

As utilized in the *Wicks* case, defendant's written change of plea form, supplemented by the in-court colloquy with defendant's counsel, constitutes, when incorporated in the record, a fully adequate "on the record" showing that defendant was both aware of all his relevant constitutional rights and knowingly, voluntarily and personally waived them.[15] In this misdemeanor context, we believe that this procedure fully satisfies the requirements of *Boykin* and *Tahl.*

■ Our conclusion that a guilty plea entered through counsel is valid so long as it is accompanied by an adequately documented showing that the defendant was aware of his constitutional rights and knowingly and intelligently waived them harmonizes the interests underlying the *Boykin-Tahl* rule, on the one hand, and the defendant's statutory right to appear through counsel, on the other. In establishing "a definite line of demarca-

---

[15]Nothing in the *Tahl* opinion specifically requires that it be the *trial court* that advises a defendant of his constitutional rights. "What is required is evidence that the particular right was known to and waived by the defendant. The explanation need not necessarily be by the court, although the waiver must be by the defendant." (1 Cal.3d at p. 133, fn. 6.) In the case of a written waiver, of course, the waiver is "by the defendant" even though he does not personally deliver it to the court.

tion between the matter of pleas before the superior courts in felony cases and the matter of pleas in inferior courts in misdemeanor cases" (*Dale* v. *City Court of Merced* (1951) 105 Cal.App.2d 602, 606 [234 P.2d 110]), the Legislature has explicitly recognized that for many misdemeanor defendants an absolute requirement of presence in court would frequently impose a greater burden than the punishment for the crime itself, and thus in these less serious prosecutions the Legislature has afforded an option to defendants to appear through counsel.

It would indeed be ironic for defendants if the *Boykin-Tahl* doctrine, developed to provide more complete protection for defendants' rights, were to be interpreted to withdraw from them the practical benefits of the statutory right to appear through counsel. As discussed above, we do not believe that *Boykin* or *Tahl* mandates such a result. As the United States Supreme Court observed in a similar context in *North Carolina* v. *Alford* (1970) 400 U.S. 25, 39 [27 L.Ed.2d 162, 172, 91 S.Ct. 160]: "The prohibitions against involuntary or unintelligent pleas should not be relaxed, but neither should an exercise in arid logic render those constitutional guarantees counterproductive and put in jeopardy the very human values they were meant to preserve."[16]

---

[16]Our conclusion that a misdemeanor defendant may waive his *Boykin-Tahl* rights through an adequate written document presented to the court is not inconsistent with article I, section 7 of the California Constitution which provides that "[a] trial by jury may be waived in all criminal cases, by the consent of both parties, expressed in open court by the defendant and his counsel. . . ." Although a long line of California cases have made it clear that such waiver of a jury trial must be made by the defendant personally in open court (see, e.g., *People* v. *Holmes* (1960) 54 Cal.2d 442 [5 Cal.Rptr. 871, 353 P.2d 583]), this provision has never been applied in the context of a guilty plea, even though such a plea has, of course, always implicitly represented a relinquishment of the right to jury trial.

In *Dale* v. *City Court of Merced* (1951) 105 Cal.App.2d 602 [234 P.2d 110], for example, defendant initially appeared with counsel at her arraignment on a misdemeanor charge, pleaded not guilty and requested a jury trial. Thereafter, counsel appeared in the absence of the defendant, informed the court that the defendant wished to change her plea to guilty, and with the court's permission, entered such a guilty plea. Defendant later attacked the judgment on the ground, inter alia, that since she had originally demanded a jury trial, the California Constitution required her personal waiver in court. The *Dale* court rejected that contention as "unsound," declaring: "The constitutional guarantee has to do with the trial of issues that are made by the pleadings and if the pleadings are such that no issue is to be tried, as in the case of a plea of guilty, then the guarantee has no application, for there are no issues and there can be no trial. There is, therefore, no occasion that the constitutional provisions as to the manner in which a jury may be waived be adhered to. *In a certain sense, of course, a defendant who pleads guilty in a criminal case waives trial by jury in that he waives all trial and makes no issue. But the Constitution does not speak of such a waiver.* On the contrary, it speaks of the trial of issues made by the pleadings, and assumes there are such." (Italics added.) (105 Cal.App.2d at

(b) *Personal entry of guilty plea by defendant.*

We have concluded above that in misdemeanor proceedings the state may validly depart from the *Boykin-Tahl* procedure prescribed for felonies to accommodate a defendant's statutory right to plead guilty through counsel. ■ Past authorities also indicate, moreover, that even when a defendant appears in court personally to plead to a misdemeanor offense, the practicalities of the crowded inferior courts will permit some deviation from the strict felony procedure so long as the constitutional rights of defendants are respected.

Thus, for example, in *In re Johnson* (1965) 62 Cal.2d 325 [42 Cal.Rptr. 228, 398 P.2d 420], discussed above, we indicated our approval of a procedure by which a trial judge, at the outset of the court proceedings, collectively advises all defendants in the courtroom of their constitutional rights, and then prefaces the arraignment of each defendant with an inquiry to ensure that the defendant heard and understood the general statement. (See 62 Cal.2d at pp. 332-333, and fn. 5; *Blake* v. *Municipal Court* (1966) 242 Cal.App.2d 731, 733-734 [51 Cal.Rptr. 771].) To provide an adequate record of a defendant's voluntary and knowing waiver of his rights, such collective warnings by the trial court could be supplemented by a written waiver form which a defendant would read and sign, or alternatively, by the traditional stenographic transcript of a defendant's oral waiver of his rights. (See *City of Cleveland* v. *Whipkey* (1972) 29 Ohio App.2d 79 [58 Ohio Ops.2d 86, 278 N.E.2d 374, 382].) These suggestions, of course, are merely illustrative and do not exhaust the various acceptable means that courts may devise to promote the efficient administration of justice without impairing constitutional rights.[17]

---

p. 607; see *In re Jingles* (1946) 27 Cal.2d 496, 499 [165 P.2d 12]; *People* v. *Johnson* (1958) 164 Cal.App.2d 470, 479 [330 P.2d 894].)

Thus, it has long been clear that our state constitutional provision governing the waiver of jury trial does not preclude a misdemeanor defendant from pleading guilty through counsel. Of course, nothing in the *Boykin* decision alters the reach of article I, section 7 of our state Constitution. Although *Boykin* and *Tahl* now require that the record in a guilty plea situation make explicit the waiver of jury trial, that waiver has always been implicit in such a plea. As the *Dale* case indicates, the state constitutional provision is not directed at such a waiver and hence the requirement of a personal *in court* waiver by the defendant is not applicable. Any inference to the contrary in *In re Tahl* (1969) 1 Cal.3d 122, 131 [81 Cal.Rptr. 577, 460 P.2d 449] is disavowed.

[17]In *In re Sheridan* (1964) 230 Cal.App.2d 365, 368-369 [40 Cal.Rptr. 894], the Court of Appeal upheld the constitutionality of a procedure in which defendants were collectively advised of their constitutional rights by the court clerk, at the behest and in the presence of the trial judge. Although we have no occasion in the instant case to pass on the validity of such a procedure in light of *Boykin* and *Tahl*, we believe that the better practice is for the trial judge, himself, to advise defendants of their rights.

We emphasize, however, that our approval of such alternatives in the misdemeanor context does not imply that similar measures will necessarily satisfy the guidelines established by *Tahl* and our subsequent decisions for felony prosecutions.

4. *Our holding that the* Boykin-Tahl *doctrine is applicable to misdemeanors applies prospectively.*

Finally, we have determined that our decision in this matter, applying the *Boykin-Tahl* requirements to misdemeanor proceedings, should be applied purely prospectively, that is, only to guilty pleas entered after the date of this decision.

Our conclusion in this regard follows from our analysis of the three-fold criteria that both the United States Supreme Court and this court have utilized for determining whether a constitutional ruling is to be applied retroactively or prospectively: "(1) the purpose of the new rule; (2) the extent of reliance upon the old rule; and (3) the effect retroactive application would have upon the administration of justice." (*Halliday* v. *United States* (1969) 394 U.S. 831, 832 [23 L.Ed.2d 16, 19, 89 S.Ct. 1498]; *In re Tahl* (1969) 1 Cal.3d 122, 134 [81 Cal.Rptr. 577, 460 P.2d 449].)

We look first to the purposes of the *Boykin-Tahl* rule and of our present application of the rule to misdemeanors. In undertaking a similar inquiry in *People* v. *Gallegos* (1971) 4 Cal.3d 242, 247 [93 Cal.Rptr. 229, 481 P.2d 237], we observed: "The purposes of *Boykin,* as interpreted and implemented by *Tahl,* are to assure both that pleas of guilty are intelligently made and to provide a 'complete record' to facilitate disposition of the post-conviction attacks on the plea." It is evident that our present ruling serves identical purposes in the context of misdemeanors.

The *Gallegos* opinion additionally makes clear, however, that the role played by the *Boykin-Tahl* doctrine in assuring intelligent and voluntary guilty pleas is a "primarily prophylactic" one (4 Cal.3d at p. 248), for even prior to *Boykin* and *Tahl* a defendant could have his guilty plea set aside if he could actually prove that the plea was not knowingly or voluntarily entered. Thus, in denying retroactive effect to *Boykin,* the *Tahl* court did not thereby insulate unknowing or involuntary pleas from all collateral attack; instead, it simply refused to apply the decision's "prophylactic" requirement of an explicit "on the record" showing of voluntariness to past guilty pleas.

In like manner, while the purpose of our present decision is to provide "important new safeguards" to ensure that misdemeanor guilty pleas are intelligently made (cf. *Johnson* v. *New Jersey* (1966) 384 U.S. 719, 730 [16 L.Ed.2d 882, 890, 86 S.Ct. 1772]), the absence of such safeguards in prior pleas does not necessarily negate the voluntariness of such guilty pleas. Moreover, as in the felony context, a defendant who pled guilty to a misdemeanor in the past "is not precluded from showing in a collateral attack on the judgment of conviction that the [plea] was involuntarily made [citations] or was made by counsel without his acquiescence after he had expressly indicated his desire to plead not guilty. [Citations.]" *(People* v. *Gallegos* (1971) 4 Cal.3d 242, 249 [93 Cal.Rptr. 229, 481 P.2d 237].) Thus, we do not defeat the purpose of our decision by confining its application to future cases.

The second relevant factor in the "retroactivity" determination is the extent of reliance on the old rule. In *Gallegos,* we considered this issue in determining whether our decision in *In re Mosley* (1970) 1 Cal.3d 913 [83 Cal.Rptr. 809, 464 P.2d 473], applying *Boykin-Tahl* to submission on transcripts under circumstances in which such submissions were tantamount to pleas of guilty, should be applied retroactively to *Boykin* or should be applied prospectively. Concluding that trial courts' reliance on past practice in this "submission on the transcript" context "was not unwarranted" before *Mosley* because *Boykin* "did not sufficiently cast doubt on the continued acceptability of the former practice to give adequate notice to trial judges . . ." (4 Cal.3d at p. 248), we held in *Gallegos* that *Mosley* was to be accorded only prospective effect.

We believe a similar situation prevails in the instant case. With respect to those misdemeanor guilty pleas entered by counsel on behalf of an absent defendant, it would clearly be unreasonable to expect trial judges to have anticipated our decision in the instant case. In such circumstances, where the defendant was not even before the court, we would require an "impossible prescience" (cf. *In re Woods* (1966) 64 Cal.2d 3, 9 [48 Cal. Rptr. 689, 409 P.2d 913]) of courts and attorneys if we faulted them for failing to predict our present resolution of the *Boykin-Tahl* issue. Moreover, while it is arguable that inferior trial courts should reasonably have foreseen the applicability of *Boykin* and *Tahl* to those misdemeanor proceedings in which defendants personally entered pleas of guilty (see *In re Gannon* (1972) 26 Cal.App.3d 731 [103 Cal.Rptr. 224]; *Cooper* v. *Justice Court* (1972) 28 Cal.App.3d 286 [104 Cal.Rptr. 543]), *Boykin* and *Tahl* did involve serious felonies and there is at least some language in those opinions which might have led some judges to doubt their application to

misdemeanors.[18] Such doubts, of course, may also have been bolstered by trial judges' recognition of a misdemeanor defendant's right to plead guilty through counsel.

Finally, we believe that a retroactive application of the present decision would have a seriously detrimental effect on the administration of justice which far outweighs the possible benefits to be gained from such application. Since the *Boykin* decision in June 1969, many thousands of guilty pleas have been entered in misdemeanor proceedings. If we were to apply the present decision retroactively, we would undoubtedly invalidate many of these convictions, convictions which, although lacking explicit "on the record" waivers, for the most part resulted from voluntary and intelligent guilty pleas. As we noted in *Tahl*: "[W]hile we endorse the Supreme Court's determination [in *Boykin*] that more explicit proceedings are both necessary and desirable to assure the utmost constitutional protection to an accused, we also must recognize that a 'large number of constitutionally valid convictions . . . may have been obtained'—and indeed were obtained—under the previous practice. To invalidate all such prior guilty pleas years . . . after their acceptance would have a dolorous effect upon the administration of justice." (Fn. omitted.) (1 Cal.3d at p. 135.)

These observations are particularly appropriate in the misdemeanor context where, in light of the less serious nature of such charges, relevant evidence in past cases has in all probability long been discarded and re-

---

[18]Thus, for example, a concluding passage of *Boykin* states: "What is at stake *for an accused facing death or imprisonment* demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." (Italics added.) (395 U.S. at pp. 243-244 [23 L.Ed.2d at p. 280].) Inasmuch as some misdemeanor defendants face only a fine rather than imprisonment, this passage could be misleading. Moreover, as noted earlier (see fn. 8, *supra*) the *Boykin* court stressed that one significant right waived by pleading guilty was the federal constitutional right to trial by jury; since that federal right does not attach to all misdemeanor proceedings, the court's concern over such waiver may have served as a further source of confusion to trial judges seeking to determine the reach of the decision.

It is true that one footnote in our *Tahl* opinion did intimate that the principles therein were applicable to misdemeanors as well as felonies. In explaining our conclusion that the *Boykin* decision should be accorded only prospective effect, we observed: "The magnitude of the potential effect [of retroactive application] on the administration of justice is apparent when we note that in California for the years 1960 through 1967 felony convictions obtained on pleas of guilty totaled 173,496. [Citation.] *The number of misdemeanor convictions would be considerably higher.*" (Italics added.) (1 Cal.3d at p. 135, fn. 10.) We are not convinced, however, that this single reference—in dictum—constitutes adequate "notice" to trial courts of the inevitability of our present decision.

prosecution at this late date will frequently not be feasible. Under these circumstances, we conclude that prospective application is appropriate.

5. *Conclusion.*

To reiterate, we have concluded above that the principles underlying the *Boykin-Tahl* decisions are applicable to misdemeanor proceedings. We have also indicated that in implementing these principles in the misdemeanor field, the procedure required for felony prosecutions need not be precisely duplicated, but variations may be adopted so long as defendants' fundamental constitutional rights are respected. In particular, we have explained that the application of the *Boykin-Tahl* rule does not preclude the entry of a guilty plea through counsel, so long as the record explicitly demonstrates the defendant's awareness, and personal waiver, of the constitutional rights relinquished by his plea of guilty. Moreover, we have also recognized that when misdemeanor defendants personally appear in court to enter their pleas, the trial judge may collectively advise such defendants of their constitutional rights so long as adequate evidence of each defendant's personal waiver appears on the record. Finally, we have held that our present decision is to be applied purely prospectively.

In light of these conclusions, the writ of mandate requested in both of the present cases must be denied. Given the prospective effect of our ruling, the court in *Mills* v. *Municipal Court* did not err in refusing to set aside petitioner Mills' 1971 conviction. Similarly, in *People* v. *Superior Court (Wicks),* the superior court properly concluded that under the circumstances the municipal court should have accepted defendant Wicks' plea of guilty tendered by his counsel.

In *Mills* v. *Municipal Court* (L.A. 30117) the alternative writ of mandate is discharged and the peremptory writ is denied. In *People* v. *Superior Court (Wicks)* (L.A. 30108) the alternative writ of mandate is discharged and the peremptory writ is denied.

Wright, C. J., McComb, J., Mosk, J., Burke, J., Sullivan, J., and Clark, J., concurred.

312

MUNICIPAL COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

San Diego Judicial District

THE PEOPLE OF THE STATE OF CALIFORNIA,

Plaintiff,

vs.

*Stanley Albert Wicks*
Defendant.

No. *H-774905*

CHANGE TO PLEA OF GUILTY
(Attorney Without Defendant Present)
(MISDEMEANOR)

DEFENDANT TO INITIAL EACH ITEM

Comes now *Stanley Albert Wicks* defendant in the above-entitled criminal action, and in support of his motion to change his plea(s) to be made in open court by and through his attorney, does declare:

1. That his attorney in the above-entitled criminal action is *K. Neal Richards*;

2. That he is charged in Complaint No. *H-774905* with having violated *23102(a) V.C.*
(Code Sect on(s) and Count(s))

3. That he desires to change his plea(s) and desires to plead Guilty to *367(d) P.C.*

(Set forth Code Section(s) and Count(s) including lesser offense(s) to which plea(s) is to be made )

4. That he *is* now and *was* at the time this form was prepared in possession of all his faculties and
(is/is not) (was/was not)
has not consumed any drug, narcotic, or alcoholic beverage in the 24-hour period preceding the entry of this plea to the extent that his sound judgment is impaired;

5. That he *does* understand the nature of the charge(s) against him;
(does/does not)

6. That he *has* discussed the nature of the charge(s) against him and the possible defense(s) thereto
(has/has not)
with his attorney and understands the consequences of a plea of Guilty;

7. That he violated the aforementioned Penal Code section(s) by *driving any automobile while under the influence of an intoxicating beverage*;

8. That he has been advised of the following constitutional rights by the Court:
 (a) The right to be tried by a jury;
 (b) The right to confront and to cross-examine all the witnesses against him,
 (c) The right at the trial to present evidence in his favor and either to testify for himself or, if he wishes he may remain silent;
 (d) The right to a speedy and public trial;
 (e) The right to have witnesses subpoenaed to testify in his behalf and to obtain all evidence which might exonerate the defendant,
 (f) The right to have a qualified lawyer defend him at all stages of the proceedings; that said attorney may be of defendant's own choice or shall be court appointed if the defendant is unable to afford counsel.

8a. That he *does* except for his right to be represented by an attorney, knowingly and intelligently waive each and every one of his rights as set forth in item 8 above, including·
 (a) The right to be tried by a jury;
 (b) The right to confront and to cross-examine all the witnesses against him;
 (c) The right against self-incrimination

9. That his decision to change his plea(s) *has* been made freely and voluntarily, without threat or fear
(has/has not)
to him or to anyone closely related to or associated with him;

10. That his attorney *has* explained the possible sentence(s) and defendant understands the maximum
(has/has not)
punishment of the plea(s) of Guilty to be *6 mos in custody and/or $500*

11. That his attorney *has* explained the possible penalties and consequences of the plea(s) of Guilty to be *stipulated fine of $150 if similar offense within seven years, loss of driving privilege; possible time in custody suspended by the court on condition no similar offenses; not free without valid license; not drive with odor of alcohol on breath.*

Form 453 Item 3 71

12. That he *has not* been induced to plead Guilty by any promise or representation of a lesser sentence, pro-
(has/has not)
bation, reward, immunity, or anything else, except as stated below. If defendant's plea(s) of Guilty (is/
are) the result of discussions with the City Prosecutor, (eg, that the City Prosecutor has agreed to move to
dismiss a count if defendant pleads Guilty to another count), explain briefly such promise or plea bargain-
ing in the following space. ... *City attorney will dismiss charge of*
*23026(a) and agree to recommended fine of $* ............... ; [su]

13. That he *does* understand that the matter of probation and sentence is to be determined solely by the [su]
(does/does not)
court; and

14. That he is pleading Guilty because in truth and in fact he *is* Guilty, and for no other reason. [su]
(is/is not)

Defendant has (Cross out the inapplicable phrase)
1. ~~personally prepared and discussed with his attorney~~
2. read, discussed, and has had explained to him by his attorney

each of the above items, and understands same. Defendant has initialed each item as proof thereof.

Dated this *21st* day of *December*, 1972

*Stanley Albert Wicke*
(Defendant's signature)

*R. Neal Richards* ................................... states that he is the attorney for
the defendant in the above-entitled criminal action; that he personally read, discussed and explained the
contents of the above declaration of the defendant and each item thereof, that defendant's constitutional rights
have not been violated; that no meritorious defense exists to the charge(s) to which defendant is pleading
Guilty; that he personally observed the defendant (fill in and initial each item, or read and initial each item)
acknowledging explanation of the contents of each item; that he observed defendant date and sign said dec-
laration; that he concurs in defendant's withdrawal of his plea(s) of not guilty; that he concurs in defend-
ant's plea(s) of Guilty to the charge(s) as set forth by the defendant in the above declaration

Dated this *21st* day of *December*, 1972

*R. Neal Richards*
(Attorney's signature)

The People of the State of California, plaintiff in the above-entitled action, by and through its attor-
ney, the City Prosecutor, concurs in the defendant's withdrawal of his plea(s) of not guilty and in the
defendant's plea(s) of Guilty to the charge(s) set forth by the defendant in the above declaration

Dated this *21st* day of *December*, 1972

(City Prosecutor)

Defendant, by and through his attorney, having in open court moved to withdraw his plea(s) of not
guilty as heretofore entered and the People of the State of California, by and through its attorney, having
concurred in said motion;

IT IS HEREBY ORDERED that said motion be and the same is hereby granted.

Dated: .......... DEC 2 1 1972

(Judge of the Municipal Court)

Form 459 reverse