*CJP Supp. 47 Opinion
BONNER, Chairperson.
This disciplinary matter concerns Judge Christopher J. Sheldon, a judge of the Riverside County Superior Court. The commission issues this public admonishment based on its conclusion that Judge Sheldon committed conduct prejudicial to the administration of justice that brings the judicial office into disrepute.
APPEARANCES
Trial counsel for the Commission on Judicial Performance is Jack Coyle. Counsel for Judge Sheldon are James E. Friedhofer, Douglas R. Reynolds, and Eric D. Weitz of Lewis, D’Amato, Brisbois & Bisgaard (San Diego).
*CJP Supp. 48 PROCEDURAL HISTORY
Judge Sheldon became a municipal court judge in 1989 and was appointed to the superior court in 1992. In 1995, the Superior and Municipal Courts of Riverside County were consolidated and Judge Sheldon volunteered to handle the afternoon misdemeanor pretrial calendar in addition to his superior court duties. These proceedings concern Judge Sheldon’s method of handling the misdemeanor pretrial calendar from July 1995 until March 8, 1996.
The commission’s investigation of these proceedings led to the filing, on October 7, 1997, of a notice of formal proceedings. Judge Sheldon filed a verified answer denying that he had conducted court business in violation of proper judicial procedures.
As provided for by rule 121(b) of the Rules of the Commission on Judicial Performance, the Supreme Court appointed three special masters to conduct an evidentiary hearing and to prepare a written report. The evidentiary hearing was held on May 18 and 19, 1998, before Judge Mark R. Forcum, presiding, of the San Mateo County Superior Court and Judge Robert A. O’Farrell of the Monterey County Superior Court.[1] On August 5, 1998, the special masters filed their final report.
On August 19, 1998, Judge Sheldon filed objections to the special masters’ report, and after further briefing, the matter was set for oral argument before the commission on October 8, 1998. Eight members of the commission participated, two were absent, and there is one vacancy.
THE CHARGES
The notice of formal proceedings charged Judge Sheldon with “willful misconduct in office, conduct prejudicial to the administration of justice that brings the judicial office into disrepute and improper action” all within the meaning of article VI, section 18 of the California Constitution which also provides for removal, censure, public admonishment or private admonishment of a judge. The notice advanced the following specific allegations against Judge Sheldon: “You conducted business in violation of proper judicial procedures. From approximately July 1995 through February 1996, you frequently failed to take the bench, or you left the bench during portions of your misdemeanor calendar. In your absence from the courtroom, you allowed clerks to enter pleas and execute court documents imposing sentences, enter continuances agreed to by the attorneys and set hearing dates. *CJP Supp. 49 For some pleas entered in your absence, you allowed clerks to stamp your signature on constitutional rights waiver forms. For some pleas entered in your absence, you signed rights waiver forms after the pretrial calendar was concluded. In other cases, rights waiver forms were neither signed by you nor stamped with your signature. On some occasions while your pretrial calendar was ongoing, you left the courthouse. You abandoned your role in the adjudicative process and demonstrated a disregard for your obligation to diligently perform the duties of judicial office.”
FINDINGS[2]
Judge Sheldon’s misdemeanor pretrial calendar was conducted Monday through Thursday. It was scheduled to begin at 1:30 p.m. and usually lasted until 4:00 p.m., although it occasionally ran as late as 6:00 p.m. The number of cases on each calendar was frequently more than 100.
Judge Sheldon decided that it would not be necessary for him to be on the bench to handle each case during the misdemeanor pretrial calendar. He met with deputy public defenders and the deputy district attorney assigned to his pretrial calendar and with one courtroom clerk to explain to them his new procedure. He asked the attorneys to handle routine things and to let him know if they needed him. He did not personally explain to the courtroom clerks how to handle the cases in his absence.
Judge Sheldon, starting in July 1995, took the bench only to handle the in-custody defendants at the beginning of the calendar, some private attorney cases, cases in which the attorneys could not agree upon a disposition, and driving under the influence cases reduced to alcohol-related reckless driving charges. He also took the bench to issue bench warrants at the end of calendars. The large majority of cases on the pretrial calendar were adjudicated in Judge Sheldon’s absence and without his participation.
On the vast majority of cases on the pretrial calendar, the defendants’ attorneys and the prosecutor agreed on a disposition. For those cases, respondent did not take the bench. Most of the cases on Judge Sheldon’s calendar had out of custody defendants. Judge Sheldon had no involvement in approximately 90 percent to 95 percent of the out of custody cases.
The sentences were determined by the deputy district attorney who sat at counsel table in court and talked to defense counsel who lined up to talk to him. The deputy district attorney would extend offers of sentences and further *CJP Supp. 50 negotiate with defendants’ counsel. When the deputy district attorney and defense counsel agreed upon a plea and sentence, the defendant and his attorney would fill out a “Tahl” change of plea form (indicating that the defendant understood and waived his constitutional rights regarding trial)[3] and a terms and conditions of probation form. Although all defendants at issue were sentenced to probation, some defendants were sentenced to jail as a condition of probation. The deputy district attorney would review the forms and defense counsel would submit the forms to the clerks who would put the forms in the file, enter the plea and sentence into the computer, and generate a minute order.
Initially, the clerks would bring the files to Judge Sheldon for his signature on the Tahl forms, but Judge Sheldon then gave them the option of stamping his name on the forms. The courtroom clerks thereafter routinely stamped Judge Sheldon’s name on the Tahl forms and Judge Sheldon did not review the court files.
A judge’s signature on a Tahl form indicates that the judge has reviewed the completed form and that the defendant has been apprised of his constitutional rights, has waived these constitutional rights, has entered into the plea freely and knowingly, and that the court accepts the plea.[4] When Judge Sheldon signed these Tahl forms, he had not questioned the defendant to determine if the plea in question was knowing, voluntary and intelligent. When the clerks stamped the Tahl forms with his signature, Judge Sheldon had not reviewed the forms, questioned the defendant, nor made any of the purported findings.
Judge Sheldon did not impose sentence in open court in these out of custody cases. He acknowledged before the special masters that he did not know when exactly a sentence was imposed under his procedure.
Defense counsel and the prosecutor liked Judge Sheldon’s method of handling the pretrial calendar and believed that the pleas entered under the *CJP Supp. 51 system were valid. Apparently, no legal challenge has been made to a plea entered under Judge Sheldon’s procedures.
Ultimately other judges complained about Judge Sheldon’s pretrial calendar procedure to Riverside County Presiding Judge Edward Webster. Judge Webster thought it was “bad practice” for Judge Sheldon to not be on the bench when pleas were entered. He testified that the great majority of judges in Riverside County did not like the practice. Judge Webster discussed the matter with Judge Sheldon’s immediate supervising judge, Judge Robert Taylor, who met with Judge Sheldon on March 7, 1996. The next day, Judge Sheldon announced in court that he was discontinuing his procedure of being absent from the bench. Since then, Judge Sheldon has been on the bench taking guilty pleas and imposing sentences during the misdemeanor pretrial calendar, and he now personally signs all Tahl forms.
On occasion, Judge Sheldon left the courthouse while the misdemeanor pretrial calendar was still pending. He testified that he would schedule personal matters outside of the courthouse for as early as 3:00 p.m., but that when he left early he would arrange for another judicial officer to cover for him. Sometimes Judge Sheldon personally asked another judicial officer to cover for him and sometimes he asked his bailiff to arrange “cover.” Judge Sheldon did not know whether the other judicial officer would actually take the bench or would just be available, and he did not always inform the attorneys or clerks that he was no longer available to help them, or that a commissioner rather than a judge was covering. Judge Sheldon admitted that on one occasion (Feb. 29, 1996) he left the courthouse before the calendar was concluded when he had been told that there was no coverage by another judicial officer.
In response to the allegation that during his afternoon pretrial calendar he was absent from the bench “exercising in or about the courthouse,” Judge Sheldon, through counsel, admitted by letter: “Judge Sheldon did upon occasion exercise by running the stairs next to his chambers during the pretrial calendar. He has since stopped this practice. He understands that exercising during the day, other than at the lunch break, could give the appearance of disinterest [sic] in the proceedings in his court and misuse of time. He was merely trying to use his time efficiently, and regrets any appearance of disinterest [sic] or misuse of time. He has no backlog of cases, so his occasional exercising outside of the lunch hour did not slow his case flow. He understands that judges must endeavor to do nothing that would undermine confidence in the judicial system.”
*CJP Supp. 52 CONCLUSIONS
The commission, having considered Judge Sheldon’s objections to the special masters’ conclusions of law, adopts the special masters’ conclusions of law and they are incorporated herein by reference.
In particular, the commission agrees with the special masters’ conclusions that Judge Sheldon committed prejudicial misconduct by abandoning his duties “to be on the bench to preside over cases when they are adjudicated in his court,” “to determine that a defendant entering a plea has done so freely and voluntarily and that the defendant has made a knowing, intelligent, and voluntary waiver of his constitutional rights,” “to approve a sentence agreed upon by the attorneys,” and “to impose sentence.”
The special masters noted that there “is an appropriate expectation that it is the judge who makes an independent evaluation of all issues presented to the court.” The commission concurs that the fact that Judge Sheldon in many cases allowed the district attorney to determine the sentence, combined with the fact that he never appeared in court to impose sentence, undermined the public’s confidence in an independent judiciary.
The commission also agrees with the special masters’ conclusion that by allowing clerks to stamp his name to forms attesting that he had reviewed the forms and had made various findings regarding the entry of a plea, when in fact he had not done so, Judge Sheldon “knowingly allowed inaccurate and misleading court records to be created.”
Judge Sheldon’s conduct in managing his pretrial calendar was unjudicial and violated California Code of Judicial Ethics canon 1 (judge shall uphold integrity of judiciary), canon 2A (judge shall act at all times in a manner which promotes public confidence in the judiciary), and canon 3B(1) (judge shall hear and decide all matters assigned to the judge except when disqualified).
The commission also accepts the special masters’ conclusions that (1) Judge Sheldon’s admitted occasional jogging on the stairs during his afternoon pretrial calendar is misconduct in and of itself (violating Cal. Code Jud. Ethics, canon 4A(3) (a judge shall conduct his extrajudicial activities so that they do not interfere with the proper performance of his judicial duties), canon 3A (judicial duties take precedence over all other activities) and canon 2A (a judge must avoid the appearance of impropriety and must act to promote public confidence in the judiciary)); and (2) Judge Sheldon engaged in prejudicial conduct when on one occasion he left the courthouse with his pretrial calendar ongoing (violating canons 4A(3), 3A & 2A), but that on *CJP Supp. 53 other occasions when Judge Sheldon left the courthouse prior to the conclusion of his calendar, he arranged to have another judicial officer “cover” the end of his calendar.
The special masters concluded, and the commission agrees, that Judge Sheldon’s actions do not amount to willful misconduct. As most recently reiterated by the Supreme Court in Broadman v. Commission on Judicial Performance (1998) 18 Cal.4th 1079, 1091 [77 Cal.Rptr.2d 408, 959 P.2d 715] (Broadman), “[t]o commit willful misconduct in office, a judge must (1) engage in conduct that is unjudicial and (2) committed in bad faith, (3) while acting in a judicial capacity.” Judge Sheldon maintained that he did not think that the procedures violated the law and that he was motivated by a desire to make the pretrial calendar run more efficiently. The commission concurs in the special masters’ conclusion that the element of bad faith is lacking.
Judge Sheldon’s behavior, however, does constitute conduct prejudicial to the administration of justice that brings the judicial office into disrepute. In Broadman, the Supreme Court explained that “conduct which a judge undertakes in good faith but which nevertheless would appear to an objective observer to be not only unjudicial conduct but conduct prejudicial to public esteem for the judicial office” constitutes prejudicial conduct.[5] The special masters concluded, and the commission concurs, that Judge Sheldon’s behavior constituted prejudicial conduct as he “should have known that his method of conducting his calendar was improper, and that his conduct in this regard would be viewed by the public (correctly) as an abdication of judicial duties,” and that the charge of prejudicial conduct was proved by clear and convincing evidence.
These conclusions are reinforced by the special masters’ conclusions that Judge Sheldon’s occasional jogging on the stairs during the afternoon calendar and his departure from the courthouse on February 29, 1998, with his pretrial calendar ongoing and not covered by another judicial officer, are each in and of themselves sanctionable misconduct. We agree with the special masters that this conduct gave the appearance that Judge Sheldon was not interested in the courtroom proceedings and that he was using court time for personal matters.
*CJP Supp. 54 DISCIPLINE
The Supreme Court recently reiterated that the purpose of a commission disciplinary proceeding is not punishment, “ ‘but rather the protection of the public, the enforcement of rigorous standards of judicial conduct, and the maintenance of public confidence in the integrity and independence of the judicial system.’ ” (Broadman, supra, at pp. 1111-1112, quoting Adams v. Commission on Judicial Performance (1995) 10 Cal.4th 866, 912 [42 Cal.Rptr.2d 606, 897 P.2d 544].)
The commission appreciates Judge Sheldon’s willingness to take on the misdemeanor pretrial calendar in addition to his other duties. The commission also recognizes that Judge Sheldon’s motivation in adopting the procedure in issue was a desire to make the pretrial calendar run more efficiently, and that he promptly changed his procedure after being counseled by the supervising judge.
Several aspects of this case, however, lead the commission to conclude that the public will be best served through the issuance of a public admonishment. First, a public admonishment is required because Judge Sheldon abandoned his fundamental responsibilities to be on the bench to preside over cases when they are adjudicated in his court, to determine that a defendant entering a plea does so freely and voluntarily and has made a knowing and intelligent waiver of his constitutional rights, and to approve and impose the sentence. For six months, the public observed sentences being imposed without the participation of a judge. Furthermore, Judge Sheldon has maintained, both before the special masters and before the commission, that there was nothing wrong with his procedure. Judge Sheldon’s confidence in the district attorneys, public defenders and private attorneys who appear in his court may be well taken, but the integrity and independence of the judicial system does not permit the delegation of such fundamental judicial responsibilities as taking guilty pleas and imposing sentence.[6]
Second, Judge Sheldon’s practice of allowing his courtroom clerks to stamp his signature on Tahl forms when he never saw the files created *CJP Supp. 55 inaccurate and misleading court records. The commission notes that appellate courts (and appellate divisions) are particularly dependent on the accuracy of the printed record created in the trial court. Judge Sheldon’s suggestion that other judges on occasion allow their courtroom clerks to stamp their signatures on Tahl forms militates in favor of the issuance of a public admonishment in order to discourage such practices.
Finally, a public admonishment is an appropriate response to Judge Sheldon having left the courthouse on February 29, 1996, prior to the completion of the pretrial calendar when no other judicial officer was available to cover the calendar and his occasional running of the stairs next to his chambers during his pretrial calendar.
This decision shall constitute the order of public admonishment of Judge Sheldon.
The commission’s vote was 8 to 0, two were absent, and there is one vacancy.
Commission members Robert C. Bonner, Esq., Ms. Ophelia Basgal, Mr. Mike Farrell, Hon. Daniel M. Hanlon, Patrick M. Kelly, Esq., Mr. Luke Leung, Ms. Ramona Ripston, and Donald E. Vinson, Ph.D., voted for the public admonishment. Commission members Hon. Lois Haight and Ms. Harriet Salarno did not participate. There was one vacant position on the commission.

 Judge Janet I. Kintner of the San Diego County Municipal Court was also appointed as a special master by the Supreme Court but withdrew from the proceedings prior to the evidentiary hearing. Judge Sheldon agreed to a hearing before only two special masters.

 Neither party disputed the special masters’ findings of fact and they are adopted by reference.

 The forms take their name from the Supreme Court’s opinion in In re Tahl (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449], which undertook an extensive analysis of Boykin v. Alabama (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709]. The Tahl opinion sets forth certain standards for the trial record of a plea of guilty.

 The following language appears above the line for the judge’s signature on the Tahl form: “The Court, having reviewed this form and having questioned the defendant concerning the defendant’s Constitutional rights and the defendant’s admission of prior conviction(s) and probation violation(s), if any, finds that the defendant has expressly, knowingly, understandingly and intelligently waived his or her constitutional rights. The Court finds that the defendant’s plea(s) and admission(s) are freely and voluntarily made with an understanding of the nature and consequences thereof, and that there is a factual basis for the plea(s). The Court accepts the defendant’s plea(s), the defendant’s admission of the other conviction(s) and probation violation(s), if any, and the defendant is convicted on his or her plea(s).”

 Citing Kennick v. Commission on Judicial Performance (1990) 50 Cal.3d 297, 314 [267 Cal.Rptr. 293, 787 R2d 591], the Supreme Court reiterated “In sum, to constitute prejudicial conduct, a judge’s actions must bring ‘the judicial office into disrepute,’ that is, the conduct would appear to an objective observer to be prejudicial to ‘ “public esteem for the judicial office.” ’ ” (Broadman, supra, 18 Cal.4th at p. 1093.)

 Judge Sheldon’s citation to provisions allowing defendants to sign Tahl forms and excusing defendants from appearing in court, suggest a failure to differentiate between an attorney’s responsibility to his or her client and a judge’s responsibilities to independently assure the protection of the defendant’s rights. The importance of this difference may be gleaned from the Supreme Court’s opinion in Mills v. Municipal Court (1973) 10 Cal.3d 288, 305 [110 Cal.Rptr. 329, 515 P.2d 273], where the court, in discussing a misdemeanor, states that “defendant’s written change of plea form, supplemented by the in-court colloquy with defendant’s counsel, constitutes, when incorporated in the record, a fully adequate ‘on the record’ showing that defendant was both aware of all his relevant constitutional rights and knowingly, voluntarily and personally waived them.”