Filed 10/4/21 (opinion following transfer from Supreme Court)

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
|     Plaintiff and Respondent, | E072782 |
| v. | (Super.Ct.No. RIF75184) |
| ESTEBAN ZARATE BRAVO, | OPINION |
|     Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County. Jacqueline C. Jackson, Judge. Affirmed.

Law Offices of Paul C. Supple and Paul C. Supple, for Defendant and Appellant.

Rob Bonta and Xavier Becerra, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Melissa A. Mandel, Deputy Attorneys General, for Plaintiff and Respondent.

1

# I

## INTRODUCTION

On June 24, 1997, defendant Estaban Zarate Bravo pleaded guilty to and was convicted on a plea bargain agreement of: a felony violation of domestic violence (Pen. Code,[1] §273.5, subd. (a); count 1) and felony violation of child cruelty (§ 273a, subd. (a); count 2). The trial court sentenced defendant to two years' incarceration, suspended, and placed him on formal probation for 36 months on terms and conditions including 25 days' custody, for which he was granted time served.

On December 11, 2018, defendant filed a motion to vacate the judgment pursuant to sections 1016.5 and 1473.7. On March 19, 2019, the trial court denied the motion. On December 23, 2020, following defendant's appeal of the trial court's decision, this court affirmed. (*People v. Bravo* (2020) 58 Cal.App.5th 1161.) On March 24, 2021, our Supreme Court granted review, and on May 3, 2021, issued *People v. Vivar* (2021) 11 Cal.5th 510, disapproving of this court's opinion in *Bravo*. On June 9, 2021, the Supreme Court transferred the appeal in *Bravo* back to this court with directions to vacate the decision and reconsider the matter in light of its decision in *Vivar*. (*People v. Bravo*, S266777, Supreme Ct. Mins., June 9, 2021.) On June 24, 2021, defendant filed a supplemental brief; on July 6, 2021, respondent filed their supplemental brief.

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

II

FACTUAL BACKGROUND

As we observed in the original opinion, the record on this appeal is slim and includes scant records dating back to the original proceedings and plea taken in 1997. It does not contain or relate the facts underlying defendant's pleas and convictions. The only records dating to the 1997 proceedings are the felony complaint, two minute orders, and the advisement of rights. Most of the record is of proceedings in the trial court at the time of defendant's 2018–2019 motion to vacate the earlier judgment.

The felony complaint alleged that as to count 1, on June 7, 1997, defendant violated section 273.5, subdivision (a), by willfully and unlawfully inflicting a corporal injury resulting in a traumatic condition upon Lucy D., who was defendant's spouse; and, as to count 2, also on June 7, 1997, defendant violated section 273a, subdivision (a), by willfully and unlawfully, under circumstances and conditions likely to produce great bodily harm and death, cause and permit an infant, Esteban Jr., to suffer, and inflicted unjustifiable physical pain and mental suffering, and did willfully cause and permit the person and health of said infant to be injured. The two minute orders report the felony arraignment on June 10, 1997, at which defendant pleaded not guilty, and the preliminary hearing on June 24, 1997, at which defendant pleaded guilty to both counts pursuant to a plea agreement and the sentence awarded as a result therefrom.

Defendant is a native of Mexico and Spanish is his first language. He appeared in custody at a hearing on June 24, 1997, at which he pleaded guilty to both counts with the

3

use of an interpreter.  He was admonished as to his rights, and initialed acknowledgment on a form provided therefor.[2]  These rights included the right to a speedy trial; to face and cross-examine witnesses; to ask the court to compel witnesses to attend trial; against self-incrimination; and to be represented by a lawyer.  He then initialed the statement that "*I understand that when I enter a plea of guilty, I waive, or give up each of the rights as stated above.*"

Immediately following that recitation and waiver, the form enumerates the "Consequences of Plea," stating, "*In addition to the consequences discussed in open court, and on page two of this form*, I am further aware that my guilty plea to a felony will have the following consequences:" followed by six specific statements of consequences including firearm ownership, restitution fines, and others.  The sixth such consequence states, "If I am not a citizen of the United States, I understand that this conviction may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States."  The form was signed by the defendant, defense counsel David Ross, and interpreter Elias Uribe.  The plea agreement specified that the custody term would be two years suspended, with a restitution fine of not more than $200, and that a total of 25 days' credit for time served was computed.  Defendant also initialed a block stating, "I have had an adequate time to discuss my case with my attorney, including time to discuss

---

[2]  A so-called *Tahl* form, reflecting the constitutional advisements under *In re Tahl* (1969) 1 Cal.3d 122, disavowed on other grounds in *Mills v. Municipal Court* (1973) 10 Cal.3d 288 and *Boykin v. Alabama* (1969) 395 U.S. 238.

4

(1) my constitutional rights, (2) the consequences of any guilty plea, and (3) any defenses I may have to the charges against me." Defendant's defense counsel, David Ross, also signed the form under the block stating, "I am satisfied that (1) the defendant understands his/her constitutional rights and understands that a guilty plea would be a waiver of these rights; (2) that the defendant has had an adequate opportunity to discuss his/her case with me, including any defenses he/she may have to the charges; (3) that the defendant understands the consequences of the his/her [*sic*] guilty plea."

Defendant attests by declaration that the immediate advantage of his plea was that he was to be released from custody that same day so that he could return to his construction job without being fired and could therefore support his spouse and their child.[3] Of more immediate importance, defendant was informed by counsel and the prosecution that Immigration and Customs Enforcement (ICE) would conduct a sweep of the county jail where he was being held by the next morning; being released that afternoon allowed him to avoid the ICE sweep and likely deportation as a result of that encounter.

Defendant now contends that at the time he executed the plea agreement, pleading guilty to sections 273.5, subdivision (a), and 273a, subdivision (a), he was unaware of future immigration consequences of his plea. Specifically, he asserts that he recently consulted with an immigration attorney for advice as to his intent to renew an application for lawful permanent status, for which he contends he is otherwise eligible through his

---

[3] He refers to his spouse as his girlfriend; it is unclear from this record when or if the marital status changed.

wife who is a U.S. citizen; he also contends his convictions resulting from his guilty pleas will result in certain denial of his intended citizenship application. Finally, he contends that he was never informed that he could be deported at any time after entering these pleas. In that light, he claims by his declaration he was never admonished pursuant to the requirements of section 1016.5.

Defendant argues that had he known these consequences, he would not have executed the plea agreement but would have relied on his defenses and gone to trial. He believes the prosecution's case was weak based on his then-girlfriend's alleged statement to the court at his arraignment that he had not "touch[ed], hurt or do[ne] any of the things to her or our son that I was accused of." Further, he claims that the police reports with witness statements prepared by the police "contained factual allegations that were wrong."

III

DISCUSSION

A. Standard of Review

Our Supreme Court has clarified the standard of review for motions brought pursuant to section 1473.7, subdivision (a)(1), in *Vivar*, *supra*, 11 Cal.5th 510. The Supreme Court held the independent standard of review applies to all prejudice determinations under section 1473.7, subdivision (a)(1). (*Vivar*, at pp. 523-526.)[4] "A

---

[4] *Vivar* does not appear to address the standard for motions under section 1016.5. However, as discussed herein, a simple reading of the plea bargain form defendant signed in 1997 reveals that the language on the form matches the required statutory language in section 1016.5.

6

standard of independent review—the same standard governing our review of these claims on habeas corpus—is most consistent with section 1473.7's purpose:  to offer relief to those persons who suffered 'prejudicial error' but are 'no longer imprisoned or restrained' and for that reason alone are unable to pursue relief on habeas corpus. [Citation.]"  (*Id*. at p. 525.)  " '[U]nder independent review, an appellate court exercises its independent judgment to determine whether the facts satisfy the rule of law.' [Citation.]  When courts engage in independent review, they should be mindful that ' "[i]ndependent review is not the equivalent of de novo review . . . ." '  [Citation.]  An appellate court may not simply second-guess factual findings that are based on the trial court's own observations.  [Citations.]"  (*Id*. at p. 527, italics omitted.)

In other words, we should "give particular deference to factual findings based on the trial court's personal observations of witnesses."  (*Vivar*, *supra*, 11 Cal.5th at pp. 527-528.)  Where "the facts derive entirely from written declarations and other documents, however, there is no reason to conclude the trial court has the same special purchase on the question at issue; as a practical matter, '[t]he trial court and this court are in the same position in interpreting written declarations' when reviewing a cold record in a section 1473.7 proceeding.  [Citation.]  Ultimately it is for the appellate court to decide, based on its independent judgment, whether the facts establish prejudice under section 1473.7."  (*Id*. at p. 528, fn. omitted.)

7

B. The Trial Court's Rulings

As to defendant's argument under section 1016.5, "(a) Prior to acceptance of a plea of guilty or nolo contendere to any offense punishable as a crime under state law, except offenses designated as infractions under state law, the court shall administer the following advisement on the record to the defendant:  [¶]  If you are not a citizen, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States."  (§ 1016.5, subd. (a).)

The trial court found that, "The 1016.5 does fail.  [¶]  It's clear in the written advisement that Mr. Bravo initialed next to the applicable portions and signed the document, and the court minutes, which are attached to each of Mr. Bravo's motions as well as part of the court file, indicate that at the time Judge Thierbach took the plea, he found that he understood the constitutional rights, the nature of the charges, and consequences of the plea when Mr. Bravo entered his guilty pleas to Count 1 and 2.[5] [¶]  So the 1016.5 fails."

As to defendant's argument under section 1473.7, "(a) A person who is no longer in criminal custody may file a motion to vacate a conviction or sentence for either of the following reasons:  [¶]  (1) The conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or

---

[5]  The trial court is referring to the findings recorded in the court minutes at the June 24, 1997 hearing:  "Crt finds plea is free & voluntary.  Crt finds deft knows & understands constitutional rights, nature of charges & consequences of his/her plea."

8

knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere. A finding of legal invalidity may, but need not, include a finding of ineffective assistance of counsel. [¶] (2) Newly discovered evidence of actual innocence exists that requires vacation of the conviction or sentence as a matter of law or in the interests of justice." (§ 1473.7, subd. (a).)

In this case, the trial court addressed both prongs of section 1473.7, subdivision (a): "On the 1473.7, there were two issues raised. One was the issue of alleged factual innocence, which after reading everything I don't see any credible evidence to support. So on that basis, it's denied. [¶] Additionally, once again he was properly advised of the immigration consequences. He initials the section which does state he understands that he has understood each of the above consequences after reading them. And I have to take him at his word that he read and understood all of the consequences of his plea. [¶] So his 1473.7 is also denied."

C. Defendant's Claim

Here, defendant contends that his guilty pleas were not voluntary, knowing nor intelligent and that this court should grant his motion to vacate judgment pursuant to sections 1016.5 and/or 1473.7 or, alternatively, remand directing the trial court to grant the motion.

At issue is whether, at his plea hearing on June 24, 1997, he was adequately advised of the immigration consequences of his plea of guilty to the charges of spousal abuse and child abuse. Because a claim such as defendant's may be brought without

9

invoking ineffective assistance of counsel, he is not limited to having to prove prejudice under the *Strickland v. Washington* (1984) 466 U.S. 668 (*Strickland*) standard, which requires a showing that counsel's representation fell below an objective standard of reasonableness (*id*. at p. 688) and demonstrate prejudice with a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," meaning "a probability sufficient to undermine confidence in the outcome." (*Id*. at p. 694.) He may instead "show prejudice by 'convinc[ing] the court [that he] would have chosen to lose the benefits of the plea bargain despite the possibility or probability deportation would nonetheless follow.' [Citations.]" (*People v. Camacho* (2019) 32 Cal.App.5th 998, 1010 (*Camacho*).) This prejudice analysis applies equally to claims under section 1473.7 as to claims under section 1016.5. (*Ibid*.)

D. Analysis

As directed by our Supreme Court, we reconsider defendant's appeal in light of *Vivar*. Accordingly, we employ the standard of independent review in these claims, but find that in this circumstance it makes no difference to the outcome we determined before the Supreme Court's transfer of the case back to us. That is at least in part because of the limited record presented to us on appeal, little of which dates to the original trial. The majority of the record dates to the proceedings in 2018 and 2019 which were under the direct observation of the trial court that we review here. That court's decision was based mainly on defendant's 2018 declaration and the hearing conducted March 19, 2019. To

10

the extent the trial court did not make explicit factual findings, we take that into account in our review.

First, as to defendant's section 1016.5 claim, the advisement required under section 1016.5, subdivision (a), *supra*, is satisfied by the plain-language admonition on defendant's 1997 plea bargain form: "If I am not a citizen of the United States, I understand that this conviction may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." Certainly, the term "may have" as used in section 1016.5 is itself inadequate to properly advise a defendant of the mandatory deportation consequences of a given plea, but that is not the point on this claim. The language required in the statute was properly stated in defendant's plea agreement. Accordingly, the section 1016.5 claim fails.

Second, on independent review, we find that defendant's section 1473.7 claim fails for failure to show prejudice.

Notwithstanding its sufficiency to meet the statutory language of section 1016.5, the advisement on defendant's 1997 plea agreement was inadequate to advise him of the mandatory immigration consequences of his plea. "[T]he words 'may have' in a section 1016.5 immigration advisement are not an adequate immigration advisement" for defendants with serious offenses mandating deportation or other severe immigration consequences. (*People v. Ruiz* (2020) 49 Cal.App.5th 1061, 1065 (*Ruiz*).) In such cases,

"[d]efendants must be advised that they *will be* deported, excluded, and denied naturalization as a *mandatory* consequence of the conviction." (*Ibid*.)

Here, at least defendant's plea to section 273.5 represented such consequences. A conviction under section 273.5 is an aggravated felony for the purpose of the federal Immigration and Nationality Act (INA). (*Moncrieffe v. Holder* (2013) 569 U.S. 184, 187-188; *Sessions v. Dimaya* (2018) 138 S. Ct. 1204, 1210-1211.)[6] One convicted of an aggravated felony is presumptively deportable. (8 U.S.C.S., §§ 1227, subd. (a)(2)(A)(iii), 1228, subd. (c).)

Therefore, the advisement given defendant in 1997 was inadequate under *Ruiz* to satisfy section 1473.7. Notwithstanding, defendant must also show prejudice from the advisement. In that light, he must convince the trial court that it is "reasonably probable" that "if properly advised, [the defendant] would have rejected an existing plea offer in the hope or expectation that he or she might thereby negotiate a different bargain or, failing in that, go to trial." (*People v. Martinez* (2013) 57 Cal.4th 555, 567-568 (*Martinez*) [standard for section 1016.5].) "[I]n determining the credibility of a defendant's claim [of prejudice], the court in its discretion may consider factors presented to it by the parties, such as the presence or absence of other plea offers, the seriousness of the charges in relation to the plea bargain, the defendant's criminal record, the defendant's priorities in plea bargaining, the defendant's aversion to immigration consequences, and whether the defendant had reason to believe that the charges would allow an

---

[6] On the other hand, a violation of section 273a is not an aggravated felony for purposes of the INA. (*Ramirez v. Lynch* (9th Cir. 2016) 810 F.3d 1127, 1133-1134.)

12

immigration-neutral bargain that a court would accept." (*Martinez*, at p. 568; see *Vivar*, *supra*, 11 Cal.5th at pp. 529-530.) Here, these factors are conspicuously absent.

For example, in *Vivar*, the defendant had an opportunity to take an offered immigration-neutral charge of burglary. (*Vivar*, *supra*, 11 Cal.5th at p. 518.) Though he rejected it (to his regret later), its existence at all inured to the defendant's benefit in determining prejudice. Here, with regard to the section 273.5 felony domestic violence charge, no immigration-neutral charge existed. Nor did defendant request or even explore the possibility of an immigration-neutral charge as to this offense. He did plead to, and was convicted on, an apparently immigration-neutral felony, namely, the section 273a child cruelty charge. The record shows no attempt to negotiate a plea leveraging the immigration-neutral count by admitting, for example, solely the section 273a count in place of the section 273.5 count requiring mandatory deportation. Neither does the petition suggest the possibility of having done so. Nor is there any indication whatsoever that such a suggestion would have been acceptable in negotiations with the People or when presented to the trial court. Furthermore, defendant presents no evidence that he ever participated in contemporaneous discussions or negotiations for immigration-neutral charges with the People, or even that he discussed the possibility of immigration consequences—other than described below—with his counsel. Absent any such record evidence, defendant simply claimed in his declaration, without elaboration or explanation of his basis for knowledge, that counsel did not "explore any immigration neutral charges." However, "a defendant's self-serving statement—after trial, conviction,

13

and sentence—that with competent advice he or she *would* have accepted [or rejected] a proffered plea bargain, is insufficient in and of itself to sustain the defendant's burden of proof as to prejudice, and must be corroborated independently by objective evidence." (*In re Alvernaz* (1992) 2 Cal.4th 924, 938; see *In re Hernandez* (2019) 33 Cal.App.5th 530, 547 (*Hernandez*) [" '[c]ourts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies.  Judges *should instead look* to contemporaneous evidence to substantiate a defendant's expressed preferences.  [Citation.]' "]; *People v. Mejia* (2019) 36 Cal.App.5th 859, 872 (*Mejia*) ["[i]n a postconviction setting, courts should not simply accept a defendant's statement of regret regarding the plea, courts should also 'look to contemporaneous evidence to substantiate a defendant's expressed preferences.' [Citation.]"].)  Here, notably, defendant offers no statement or declaration by his trial counsel or any other contemporaneous evidence other than the statements in his declaration to support that claim.  Accordingly, there was no supportable reason for defendant to believe the court would accept an immigration-neutral alternative charge.

In that light, an examination of the contemporaneous evidence surrounding defendant's plea reveals his priorities in his plea bargaining and the nature of the aversion to immigration consequences he actually displayed.  In the absence of a contemporary record of the plea negotiations before this court, defendant's declaration is the main substantive source of contemporaneous evidence of his priorities and intent at the time.  To the extent the trial court did not personally observe and make factual findings of

14

defendant as a witness, we review the pertinent statements independently. (*Vivar*, *supra*, 11 Cal.5th at pp. 528-529.) Chief among these are defendant's assertions in his declaration of his family in the United States and his need to support them: "At the time of this conviction hearing, I was working full-time in construction and I was learning many new carpentry skills. I had a young family to take care of that included my one-year old son . . . , his mother, my live-in girlfriend and she was caring for them on a full-time basis. I was the sole financial provider in the household. All of them depended on my income and my job. If I returned to work within the same week of my plea, I would not lose my full-time job for abandonment and I could resume paying the bills. [¶] . . . Additionally, because my bills were accruing, I was seeking release from jail to return to my full-time job to keep my family's housing and continue to support my live-in girlfriend and my infant son." Otherwise, defendant makes general, otherwise unsupported statements that neither counsel nor the interpreter advised him of the immigration consequences of his guilty plea and that he would not have taken the plea if he had known of eventually being deported and barred from lawful permanent status.

These statements do not avail defendant. They simply emphasize that he elected to take the plea bargain to obtain release and return to his girlfriend and son and resume his job. There is nothing to substantiate his claim that had he known of the ultimate immigration consequences he would have refused the plea bargain. In fact, although the statements are in the declaration, counsel did not address them in either the motion to vacate in the trial court, nor in the March 19, 2019 hearing, nor did defendant testify.

15

(*Mejia*, *supra*, 36 Cal.App.5th at pp. 864-865 [defendant testified at § 1473.7 motion hearing]; *Camacho*, *supra*, 32 Cal.App.5th at p. 1002 [same].)

To the extent that defendant now appears to address his family status in 1997 in his opening brief on appeal, he states that the ultimate immigration consequences "manifested at a time when he had a 1-year old son, his child's dependent mother as a live-in girlfriend and a promising career in carpentry. Had he known the true immigration consequences, he would have made arrangements for the short-term care of his child and [his child's] mother, rather than risk the ability to care for them in the long-term and be denied the opportunity to raise his son or see him grow up." Yet, that argument by counsel is not supported in defendant's declaration, in which he made no such statement.

In making this assertion, counsel purports to show defendant's personal attachments to this country in support of his petition. Personal attachments to the United States, including family, are evidence of a defendant's desire to vacate an earlier plea based on a lack of understanding of immigration consequences. (*Vivar*, *supra*, 11 Cal.5th at pp. 530-531.) Yet, the difference here between defendant and Vivar is significant. Vivar was brought to the United States from Mexico at age six and remained here for 40 years before his deportation determination. He had a wife, two children (including one about to deploy in the Air Force) and two grandchildren, all of whom were United States citizens. At the time of his deportation, his wife was undergoing radiation treatment for a thyroid condition. He had no ties to Mexico, spoke Spanish " 'like an

16

American' " and was an outsider in Mexico. Further, Vivar also sent a lengthy series of letters to the court expressing his interest in avoiding deportation and reasserting his desire to remain in the U.S. and become " 'an asset to my community and not a liability.' " (*Id.* at p. 531.) As our Supreme Court put it, "[t]ime and again, the record readily conveys how Vivar would have considered his immigration status 'the most important part' of his decision to plead." (*Id.* at p. 530.) Vivar's ties to the United States and his frequently and openly asserted immigration interests are not reflected in defendant's case here.

Without minimizing the importance of defendant's personal life, his ties to the United States and the consideration he gave to his immigration status were substantially different. He came to the United States at age 18 and had only been in the country four and one-half years at the time of his guilty plea. He did not claim in his declaration that his relationship with his girlfriend and son would lead him to decline a plea if he had known the ultimate immigration consequences of the plea; moreover, the offenses making him a candidate for mandatory deportation were domestic violence and child cruelty against those very persons. His declaration simply claims he elected to plead and get out of jail immediately to return to support them and avoid ICE. There is simply no evidence, contemporaneous or otherwise, outside defendant's self-serving declaration that he gave any thought to his immigration status whatsoever other than to avoid an in-custody encounter with ICE in 1997. Thus, counsel's argument in the opening brief is unsupported.

Additionally, neither in the opening brief nor in his declaration does defendant discuss how the costs of rejecting the plea—the potential sentence he faced, his ability or lack thereof to make alternative arrangements for his family, and so on—would have factored into his analysis. He simply makes a conclusory claim that he would have taken the alternative route without consideration as to the opportunity cost of doing so. Yet, to determine the reasonable probability that defendant would have rejected a plea offer, a court would need to consider not only defendant's ties to the United States and his family situation, but to consider them in light of the consequences of his rejecting the plea and proceeding to trial. Without evidence of the probability of an alternate disposition, and without evidence of both the negative and positive consequences of the plea and how the defendant would have weighed them, a defendant cannot support a showing that it is reasonably probable that, if properly advised, he would have rejected the section 273.5 plea offer "in the hope or expectation that he or she might thereby negotiate a different bargain or, failing in that, go to trial." (*Martinez*, *supra*, 57 Cal.4th at p. 567.) As noted above, defendant does not even address this point in his declaration.

Moreover, to put the entire point in context, we reiterate that the events to which he pleaded guilty in 1997 were domestic violence and child cruelty felonies against that very girlfriend and son, undercutting any claim now that he would have put himself in immediate peril of deportation in 1997 by a pending ICE sweep at the jail in order to go to trial in an attempt to avoid later immigration consequences. Defendant simply offers no contemporaneous evidence here to support such a claim.

18

Accordingly, we find that the trial court did not abuse its discretion in denying defendant's section 1473.7 application on the consideration of prejudicial error.

Defendant also claims error in the trial court's analysis of his section 1473.7 claim as including an assertion of actual innocence. Defendant attested in his declaration that he had certain defenses at the time he entered his plea in 1997. Among these were his belief that the prosecution's case was weak based on his then-girlfriend's statement to the court at defendant's arraignment that he had not touched, hurt, or done the things he was accused of to her or her son and that there were incorrect factual allegations in the police reports and witness statements the police prepared. Despite these assertions, defendant claims he never raised actual innocence, but simply articulated his defenses in his declaration to show that had he been aware of the immigration consequences, he would not have taken the offered plea agreement but would have relied on his defenses at trial. Accordingly, he contends, the trial court committed "reversible error."

The judge's ruling followed the language of section 1473.7 itself. Subdivision (a) provides two reasons that a person no longer in custody who seeks his conviction vacated may obtain relief. First, that the conviction or sentence is "legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere." Second, that "[n]ewly discovered evidence of actual innocence exists that requires vacation of the conviction or sentence as a matter of law or in the interests of justice." (§ 1473.7, subd. (a).) Based on defendant's assertion of

19

having defenses to the original charges against him including his girlfriend's testimony and the inaccuracy of the police reports, we find no abuse of discretion in the trial court having addressed the second, actual innocence, prong of section 1473.7.

Defendant's claims are without merit.

IV

DISPOSITION

The judgment of the trial court is affirmed.

CERTIFIED FOR PUBLICATION

RAMIREZ
P. J.

We concur:

McKINSTER
J.

RAPHAEL
J.

20