Filed 10/18/23  P. v. Cole CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br> Plaintiff and Respondent,<br><br> v.<br><br> KORRELL SANTANA KYBOR COLE,<br><br> Defendant and Appellant. | G061355<br><br>(Super. Ct. No. 16WF0220)<br><br>O P I N I O N |

Appeal from postjudgment orders of the Superior Court of Orange County, Michael J. Cassidy, Judge.  Affirmed as modified and remanded with directions.

Siri Shetty, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters and Charles C. Ragland, Assistant Attorneys General, Steve Oetting and Anthony Da Silva, Deputy Attorneys General, for Plaintiff and Respondent.

\*        \*        \*

A jury convicted defendant Korrell Santana Kybor Cole of attempted murder of a peace officer (Pen. Code, §§ 664, subd. (e), 187, subd. (a); count 1);[1] assault with a semiautomatic firearm on a peace officer (§ 245, subd. (d)(2); count 2); first degree residential burglary (§§ 459, 460, subd. (a); count 4); impersonating an officer (§ 146a, subd. (b); count 5); and unlawful taking of a vehicle (Veh. Code, § 10851, subd. (a); count 7). The jury further found, with regard to counts 1 and 2, defendant personally discharged a firearm (§ 12022.53, subd. (c)), and with regard to count 5, that defendant personally used a firearm (§ 12022.5, subd. (a)). The jury also acquitted defendant of one count of first degree residential burglary (§§ 459, 460, subd. (a); count 3), and the court dismissed one count of grand theft (§ 487, subd. (a); count 6) for insufficient evidence.

The court subsequently dismissed the bail enhancements in the interests of justice and sentenced defendant to state prison as follows: (1) 15 years to life on count 1, plus 20 years for the firearm enhancement (§12022.53, subd. (c)); (2) 9 years on count 2, plus 20 years for the firearm enhancement (§12022.53, subd. (c)), which were stayed pursuant to section 654; (3) four years on count 4; and (4) concurrent terms of two years on counts 5 and 7.

Defendant raises three arguments on appeal. First, he contends the court erred by denying his posttrial *Pitchess* motion to support a new trial motion based on ineffective assistance of counsel.[2] Second, he argues the court erred by denying his post-trial motion for the appointment of a crime scene reconstruction expert. Finally, defendant claims the abstract of judgment incorrectly includes a court operations/security fee and a criminal conviction assessment that the court did not impose.

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

[2] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).

We agree with defendant's latter contention. The abstract of judgment includes certain fees not orally imposed at the sentencing hearing. We accordingly remand and direct the court to correct the abstract of judgment by striking those fees, which we identify in detail below. We otherwise disagree with defendant's remaining contentions and affirm the judgment and postjudgment orders.

FACTS

In January 2016, defendant was driving a vehicle with a stolen license plate when he was involved in a traffic collision in Costa Mesa, California. Another vehicle ran through a red light and struck defendant's vehicle. After the collision, defendant unsuccessfully tried to open the trunk of his vehicle and eventually fled the scene.

Officer Kevin C. responded to a report of the collision and found defendant and another man walking on a street. The officer activated his lights and sirens and told the two men to sit on the ground. Although the man who was walking with defendant sat down, defendant initially raised his hands and briefly sat down before running away. The officer lost sight of defendant after he jumped over two fences.

Shortly after, Officer Anthony R. responded to a dispatch regarding the fleeing suspect of a hit-and-run and observed defendant running in a residential area. The officer stopped his vehicle and yelled at defendant to stop. Defendant then used a handgun he was carrying and fired a shot in the direction of the officer. The bullet struck a parked pickup truck. The driver of another parked vehicle also saw defendant with the gun and heard one shot as he moved towards her vehicle.

Defendant then ran away and entered a nearby residence. When the owners of the residence returned home, they found defendant inside. Defendant reached for his handgun and told them not to be afraid because he was a police officer. The owners fled and contacted the police.

3

After leaving that residence, defendant entered another home. Meanwhile, police officers set up a perimeter in the area and were assisted by a police helicopter flying overhead. While inside one of the residences, defendant did not respond to police commands to exit the home. About 30 to 45 minutes later, defendant drove the owner's vehicle out of the garage. Defendant eventually stopped and complied with police orders to exit the vehicle about 40 minutes later. The officers searched the vehicle and found a handgun with no round inside the chamber but found one nine-millimeter round in the magazine.[3] The officers also found a purse that belonged to one of the owners of the residences. Officers also walked through the residences defendant had entered and found the homes to be ransacked.

On the same day, Detective David S. interviewed Officer Anthony R. about the incident. At trial, the detective testified he believed Officer Anthony R. reported seeing "[defendant] while he was still in his car . . . . Officer [Anthony R.] stopped his car, told him to stop, and then he heard a shot." When asked if Officer Anthony R. ever reported seeing defendant with a gun or a gun pointed at him, the detective testified, "No." Officer Anthony R.'s testimony on this same issue is relevant to the instant appeal. At trial, Officer Anthony R. testified he told defendant to stop and saw defendant point the gun directly at him. On cross-examination, Officer Anthony R. explained he had told the detective he did not know where the gun came from, but he never said he did not see a gun in defendant's hand.

DISCUSSION

Defendant contends the court erred by denying his posttrial *Pitchess* motion to support his new trial motion based on ineffective assistance of counsel. He also argues the court erred by denying his posttrial motion for the appointment of a crime scene

_____

[3] According to one of the police officers, this meant the gun was unloaded, had malfunctioned, or had fired one round with another round loaded into the magazine.

4

reconstruction expert. Finally, he claims the abstract of judgment incorrectly includes fines that were not imposed. For the reasons discussed *infra*, the court did not abuse its discretion by denying defendant's posttrial motions. But we agree the abstract of judgment includes fines that were not imposed and remand for the court to correct the abstract of judgment by striking those fees.

*Defendant's Posttrial Pitchess Motion*

        A. Relevant Background

        In October 2020, eight months after his conviction, defendant, in propria persona, moved to discover the personnel records of Officers Kevin C., Anthony R., and Monte P. as well as crime scene investigators, Julie D. and Kimberlee G. (*Pitchess*, *supra*, 11 Cal.3d 531.) Among other things, defendant sought records concerning any "false police reports," "fabrication of evidence," "tampering with evidence" and "misconduct amounting to moral turpitude." Defendant sought records "to obtain evidence, or information that will lead to evidence, for use at a motion for new trial hearing" and "to support an incompetence of counsel claim showing trial counsel unreasonably failed to file an earlier *Pitchess* motion to gather evidence to impeach the officers." In November 2020, defendant filed another *Pitchess* motion repeating the same arguments.

        In his supporting declaration, defendant claimed Officer Anthony R. falsely testified that he saw defendant fire a gunshot directly at him. Defendant argued this testimony was inconsistent with statements Officer Anthony R. made to a detective on the day of the incident. As to Officer Kevin C., defendant's declaration stated the officer used excessive force and wrote materially false information in police reports. As to Officer Monte P. and one of the crime scene investigators, Julie D., defendant's declaration claimed they tampered with the evidence and wrote materially false information in police reports. Finally, as to the other crime scene investigator,

5

Kimberlee G., defendant's declaration stated she had tampered with and mishandled evidence, provided false testimony, and created a misleading crime scene sketch.

The police department filed an opposition and argued defendant could not seek discovery regarding Julie D. and Kimberlee G. because they were civilian crime scene investigators rather than peace officers. As to the police officers, the police department argued defendant had not established good cause for the requested discovery and could not file a post-conviction *Pitchess* motion when he had not proceeded with a new trial motion.

In December 2020, the court denied defendant's motion. As to the two civilian crime scene investigators, the court held they were not subject to *Pitchess* discovery because they were not peace officers. As to the three police officers, the court denied the motion for two reasons: (1) the postconviction *Pitchess* motion was untimely; and (2) defendant's declaration did not establish good cause for the discovery. Defendant argued: "The *Pitchess* issue actually would be timely under *People v. Nguyen* [(2007) 151 Cal.App.4th 1473] to have an *in camera* review." But the court rejected this argument and found "the cases . . . cited in [defendant's] moving papers [did not] support *Pitchess* discovery after conviction." The court concluded: "[T]here are strict rules where *Pitchess* is concerned," and "[t]here has to be a showing of good cause, and I haven't seen that. Plus it's untimely."

B. Analysis

Defendant argues the court should have granted his *Pitchess* motion because "if the records disclosed a history of dishonesty with respect to the critical law enforcement witnesses who testified against him, [defendant's] trial counsel necessarily rendered ineffective assistance of counsel in failing to adequately investigate such claims by filing a *Pitchess* motion [before trial]." We disagree.

6

"Evidence Code sections 1043 through 1045 codify [*Pitchess*].  'The statutory scheme carefully balances two directly conflicting interests: the peace officer's just claim to confidentiality, and the criminal defendant's equally compelling interest in all information pertinent to the defense.'  [Citation.]  The legislation achieves this balance primarily through a procedure of in camera review, set forth in [Evidence Code] section 1045, subdivision (b), whereby the trial court can determine whether a police officer's personnel files contain any material relevant to the defense, with only a minimal breach in the confidentiality of that file."  (*People v. Jackson* (1996) 13 Cal.4th 1164, 1220.)  To obtain an in camera review of the records, a defendant must file a motion supported by "[a]ffidavits showing good cause for the discovery or disclosure sought, setting forth the materiality thereof to the subject matter involved in the pending litigation and stating upon reasonable belief that the governmental agency identified has the records or information from the records."  (Evid. Code, § 1043, subd. (b)(3).)

While most *Pitchess* motions are filed before trial, courts have allowed these motions after trial in connection with posttrial motions and habeas corpus proceedings.  (*Eulloqui v. Superior Court* (2010) 181 Cal.App.4th 1055, 1068-1069 [habeas corpus proceeding]; *People v. Nguyen* (2007) 151 Cal.App.4th 1473, 1477-1479 [motion for new trial].)  Where, as here, the defendant seeks discovery to support a motion for new trial on grounds of ineffective assistance of counsel, "the proper standard for reviewing defendant's posttrial *Pitchess* motion was whether a reasonable probability existed that disclosure of the requested records would have led to a different result at trial."  (*Nguyen*, at p. 1478.)  "'*Pitchess* rulings are reviewed for abuse of discretion.'"  (*People v. Anderson* (2018) 5 Cal.5th 372, 391.)

At the outset, defendant contends the court erred by finding the posttrial *Pitchess* motion was improper because there was no pending motion for new trial.  Assuming, without deciding, that defendant's posttrial *Pitchess* motion was timely, the court did not err by denying the motion for lack of good cause.  As noted *ante*, a posttrial

7

*Pitchess* motion is subject to a more stringent analysis of good cause and materiality than a pretrial *Pitchess* motion.  In the context of a posttrial *Pitchess* motion intended to support a motion for new trial, the issue is "whether a reasonable probability existed that disclosure of the requested records would have led to a different result at trial."  (*People v. Nguyen*, *supra*, 151 Cal.App.4th at p. 1478.)  As to Officer Anthony R., defendant claims the officer committed perjury by testifying defendant pointed the gun at him.  Even assuming Officer Anthony R. lied at trial, an impeachment on that point likely would not have led to a different result upon retrial.  Another witness in a nearby vehicle testified that she observed defendant with a gun and saw him shoot in the direction of her and Officer Anthony R.

Defendant next suggests Officer Kevin C. testified falsely when stating he found a shell casing in the grass because this information was not in his original police report.  But there is no evidence or plausible factual scenario indicating how Officer Kevin C. could have tampered with the shell casing.  While defendant emphasizes the "information [regarding the shell casing] was missing in [the] original police report and only was inserted after the preliminary hearing," there was extensive testimony explaining why the shell casing likely was not found on the date of the incident.  Officer Kevin C. testified shell casings are ejected from semi-automatic handguns and can hit a hard surface, like a sidewalk, and land in an unexpected area.  The fleeing suspect or a civilian also can kick a shell casing and cause it to land somewhere else.  Kimberlee G. also testified the officers who searched the area did not place the shell casing in that location for her crime scene sketch.

As to Officer Monte P., defendant claims his police report falsely stated there was no round in the chamber when the handgun was recovered and that there was a hollow tip bullet in the magazine. This generalized speculation is insufficient because defendant provides no "alternate version of the facts." (*People v. Thompson* (2006) 141 Cal.App.4th 1312, 1318 [no good cause where defendant failed to provide "an alternate

8

version of the facts"].) Finally, as to the crime scene investigators, defendant claims they tampered with the evidence, mishandled evidence, provided false testimony, and created a misleading crime scene sketch. Even if they were subject to *Pitchess* discovery, defendant's assertions are pure conjecture. In short, defendant has not established a reasonable probability that the *Pitchess* discovery would have led to a different outcome at trial. The trial court acted within its discretion by finding defendant did not show good cause for the discovery sought.

*Defendant's Posttrial Motion for the Appointment of a Crime Scene Reconstruction Expert*

A. Relevant Background

Three days after the incident, Kimberlee G. prepared a crime scene sketch. The sketch indicated the location of the police patrol unit, the truck that was struck by the bullet, and the area where Officer Kevin C. found the shell casing. Kimberlee G. explained the sketch provided an "approximate re-creation" of where the vehicles were based on photographs and police vehicle camera footage taken on the day of the incident.

In August 2020, defendant, in propria persona, filed a postverdict motion under seal requesting the court appoint a crime scene reconstruction expert at county expense. He argued the crime scene sketch presented at trial "was not made contemporaneous to the crime scene investigation on January 30, 2016." Instead, a "biased staged crime scene recreation" was done "3 days after the actual incident when all relevant objects had been moved from the original positioning 3 days earlier." Defendant also argued an accurate reconstruction with "computer generated high tech forensics" would accurately depict the trajectory of the bullet and establish he did not intend to kill Officer Anthony R.

9

In September 2020, the court denied the motion "due to inadequate showing of good cause for the expenditure of public funds for this expert for purposes of a motion for a new trial." Although defendant complained the crime scene sketch was done three days after the incident, the court emphasized defendant wanted an expert to reconstruct the scene of the shooting more than four years after the incident. The court concluded it did not "see how any expert would be able to reconstruct the crime scene after so much time has passed, to be able to offer anything useful to support a motion for a new trial."

Defendant later filed another motion for the appointment of a forensic engineering scene reconstruction expert. In October 2020, the court denied the motion due to an inadequate showing of good cause for the expenditure of public funds. The court found defendant "did not provide any new information different from his last motion . . . ." The next day, defendant filed an "ex parte request for a ruling on two . . . filed motions for appointment of expert." In December 2020, the court again denied the motion for lack of good cause.

B. Analysis

Defendant argues the court abused its discretion by denying appointment of a crime scene reconstruction expert. According to defendant, the court "misunderstood the nature of the expert services requested." He claims he requested an expert to create "a computer-generated diagram obtained from contemporaneously obtained evidence — the body camera footage and photographs — [which] would demonstrate that the prosecution's evidence was inaccurate while also establishing that the victim was not in the path of the bullet." We disagree with defendant's contentions.

An indigent defendant has a constitutional right to ancillary services reasonably necessary to present a defense, including the appointment of expert witnesses. (*Ake v. Oklahoma* (1985) 470 U.S. 68, 76-77; *Corenevsky v. Superior Court* (1984) 36

10

Cal.3d 307, 319.)  "Evidence Code section 730 explicitly provides for court-appointed expert witnesses, and . . . Evidence Code section 731, subdivision (a)[(1)], and Government Code section 29603 clearly state that the county must pay those court-ordered expenses." (*Corenevsky* at pp. 318-319, fns. omitted.)  But "the burden is on the defendant to make a showing of need, before the court is required to appoint an expert." (*People v. Worthy* (1980) 109 Cal.App.3d 514, 521.)  To demonstrate the need for such services, the defendant must reference ""'the general lines of inquiry he wishes to pursue, being as specific as possible."'" (*Corenevsky* at p. 320.)  On appeal, we review a trial court's order on a motion for ancillary services for an abuse of discretion.  (*People v. Hurley* (1979) 95 Cal.App.3d 895, 899; *Corenevsky* at p. 321.)

Here, defendant did not demonstrate the need for an expert witness.  As the trial court properly noted, defendant does not explain how a crime scene reconstruction prepared four years after the incident would be more helpful than a sketch that was done three days after the incident.  Defendant also did not proffer any explanation as to why cross-examination of the pertinent witnesses who prepared the crime scene sketch was not effective.  Indeed, defendant's counsel cross-examined Julie D. about how she failed to prepare a sketch when she responded to the crime scene and did not take measurements of the vehicles in relation to various areas.  Julie D. also conceded the exact angle of a bullet strike cannot be recreated if a vehicle is driven away and later moved back to its approximate location.  Defendant's counsel further cross-examined Kimberlee G. who conceded it was concerning that Julie D. had not prepared a crime scene sketch on the day of the incident.  She also testified the shell casing found by Officer Kevin C. may not have been related to the shooting or indicate where the shooter was located.  And she conceded the patrol car video footage was more accurate than the crime scene sketch.  During closing argument, defendant's counsel extensively argued the crime scene sketch was unreliable and that Officer Anthony R. was not in the path of the bullet fired by defendant.  On this record, defendant has not demonstrated an expert

11

witness is necessary to show the prosecution's evidence was inaccurate.  The trial court accordingly did not abuse its discretion by denying defendant's motions.

*Fines and Assessments*

Defendant contends the abstract of judgment incorrectly lists a court operations/security fee in the amount of $200 and a criminal conviction assessment in the amount of $150.  He notes the court imposed a $300 restitution fine and waived all other fees based on defendant's inability to pay at sentencing.  The People concede the abstract of judgment should be corrected to remove the $200 court operations/security fee and the $150 criminal conviction assessment.  We agree.

The oral pronouncement of sentence controls over the abstract of judgment. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.)  The appellate court also has inherent power to order correction of the abstract of judgment if it does not accurately reflect the oral judgment of the court.  (*Ibid.*)  Here, the court orally imposed a $300 restitution fine pursuant to section 1202.4.  At the sentencing hearing, the court stated, "I will order that [defendant] pay a mandatory $300 State Restitution fine and a $300 Parole Revocation fine, which is stayed, unless he violates parole.  [¶]  I find no ability to pay the Court Operations Fee and Criminal Conviction Assessment Fees.  [¶]  I'll find no ability to pay the Crime Prevention Fund Fee or the — any other fees involved."  Despite the court's remarks, the abstract of judgment reflects imposition of an additional $200 court operations/security fee and a $150 criminal conviction assessment.  We accordingly direct the court to amend the abstract of judgment to reflect the fees orally pronounced at the sentencing hearing.

DISPOSITION

The clerk of the superior court is directed to correct the abstract of judgment by striking the $200 court operations/security fee and the $150 criminal

12

conviction assessment. The court also is directed to prepare an amended abstract of judgment reflecting these modifications and to forward a certified copy to the Department of Corrections and Rehabilitation. In all other respects, the judgment and postjudgment orders are affirmed.

SANCHEZ, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


GOETHALS, J.