Filed 6/25/26  P. v. Contreras CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ALFRED MICHAEL CONTRERAS,<br><br>    Defendant and Appellant. | G064890<br><br>(Super. Ct. No. 10CF2647)<br><br>O P I N I O N |

Appeal from a postjudgment order of the Superior Court of Orange County, Lewis W. Clapp, Judge. Affirmed.

Benjamin Kington, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland and Arlene A. Sevidal, Assistant Attorneys General, Alan L. Amann and A. Natasha Cortina, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

Defendant Alfred Michael Contreras pleaded guilty to one count of attempted murder (Pen. Code, §§ 187, subd. (a), 664)[1] and admitted the attempted murder was for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)). The prosecution dismissed one count of street terrorism, enhancements pursuant to sections 12022.53, subdivision (c) and 12022.7, subdivision (a), and a willful, deliberate, and premeditated allegation pursuant to section 664, subdivision (a).

The court sentenced defendant to 17 years in state prison as follows: (1) seven years on the attempted murder count; and (2) a consecutive term of 10 years for the gang enhancement.

In September 2022, defendant filed a petition for resentencing under section 1172.6. The trial court summarily denied defendant's petition for resentencing, and defendant appealed. This court concluded defendant should be afforded an evidentiary hearing, reversed the trial court's summary denial, and remanded for further proceedings. (*People v. Contreras* (Apr. 23, 2024, G062418) [nonpub. opn.] (*Contreras I*).)

After an evidentiary hearing on remand, the trial court denied the petition. Defendant filed a timely notice of appeal.

Defendant now argues insufficient evidence supports the trial court's holding that he was ineligible for resentencing. For the reasons *post*, we disagree and affirm the trial court's order.

---

[1] All further statutory references are to the Penal Code.

## STATEMENT OF FACTS

### I.

### THE UNDERLYING CRIME

One night in 2010, M.E., the 16-year-old victim, was standing outside an apartment complex in the City of Santa Ana. While waiting for his mother to pick him up, M.E. heard multiple gunshots and was shot once in the hand. At the time, M.E. was a member of a "tagging crew" called "'Keeping It Real'" or "KIR." Other groups considered "KIR" members to be future members of the West Myrtle gang.

### II.

### THE VICTIM'S STATEMENTS TO THE POLICE

While receiving treatment at the hospital, M.E. spoke to the police. He described the shooter as an 18 to 20 year old Hispanic male who was wearing a black sweatshirt. He also said the shooter was about five feet nine inches tall and had a skinny build.

Around 10 days after the incident, detective Erik Rivas and officer Matt McLeod interviewed M.E. According to M.E., a white vehicle pulled up, someone asked where he was from, and M.E. responded, "'I don't really bang.'" M.E. further reported the front passenger exited the vehicle, "called [him] out[,]" and was "[s]hooting [at him] over the roof of the car." M.E. believed the group belonged to the "F-Troop" gang and recognized the vehicle from a prior assault on him. He also saw an F-Troop member (Rookie) in the back of the vehicle and had "heard it was F-Troop."[2] He likewise heard

---

[2] The evidence suggests M.E. heard from others that F-Troop was involved.

that another F-Troop member (Boxer) was in the back of the vehicle, but he did not see Boxer. He described Rookie and Boxer as being skinny.

## III.

### THE VICTIM'S REVIEW OF A PHOTOGRAPHIC LINEUP

A few days later, detectives Rivas and Navarro[3] visited M.E.'s home and showed a "six-pack photographic lineup" to him. After reviewing the photographs, M.E. indicated the shooter could have been one of two individuals depicted. Detective Rivas questioned if he was sure and then generally asked if M.E. recognized anyone else he knew. After M.E. identified additional individuals he knew, detective Rivas asked, "You said that the shooter was heavyset?" M.E. agreed. Detective Rivas then said, "But these guys look like they're heavy . . . ." Detective Rivas also asked if the shooter was wearing a black shirt, but M.E. said he did not know. M.E. then identified defendant as the shooter.

## IV.

### THE PRELIMINARY HEARING AND INFORMATION

At the preliminary hearing in 2012, the prosecutor proceeded on the theory that defendant was the sole shooter. Defendant was the only person identified as getting out of the vehicle and shooting the victim. No others in the vehicle were identified.

The information also charged defendant alone with attempted murder and with personally discharging a firearm in the commission of the attempted murder.

---

[3] Detective Navarro's first name is not referenced in the record on appeal.

## V.

### DEFENDANT'S GUILTY PLEA

As the factual basis for his guilty plea, defendant stated: "8-16-10, I willfully + unlawfully + with the intent to kill, attempted to murder John Doe, a human being. I did this for the benefit of the Fx-Troop gang, whose members I knew have engaged in a pattern of criminal activity + with the specific intent to promote, further + assist in criminal conduct by Fx-Troop members." The prosecutor agreed to dismiss the firearm enhancement in exchange for defendant's plea.

## VI.

### DEFENDANT'S PETITION FOR RESENTENCING

In September 2022, defendant filed a petition for resentencing under section 1172.6. "In his petition for resentencing, defendant averred: '1. A complaint, information, or indictment was filed against me that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine. [Citation.] [¶] 2. I was convicted of murder, attempted murder, or manslaughter following a trial or I accepted a plea offer in lieu of a trial at which I could have been convicted of murder or attempted murder. [Citation.] [¶] 3. I could not presently be convicted of murder or attempted murder because of changes made to [sections] 188 and 189, effective January 1, 2019.'" (*Contreras I*, *supra*, G062418.)

## VII.

### THE TRIAL COURT'S SUMMARY DENIAL

After a hearing, the court denied defendant's petition for resentencing at the prima facie stage. "In a statement of decision, the court acknowledged defendant was not automatically precluded from resentencing relief because he had pled guilty to attempted murder. But the court held defendant was ineligible for resentencing as a matter of law because he admitted he attempted to murder the victim with the intent to kill. According to the court, this meant defendant acted with express malice, and malice was not imputed based solely on his participation in a crime. The court also emphasized the information alleged defendant alone committed the attempted murder and did not reference any coparticipants. The court concluded the natural and probable consequences doctrine did not apply to actual perpetrators." (*Contreras I*, *supra*, G062418.)

Another panel of this court reversed the trial court's summary denial and remanded for further proceedings. (*Contreras I*, *supra*, G062418.) In doing so, the court explained: "When a defendant is found guilty of attempted murder under a natural and probable consequences theory of liability, the specific intent to kill is imputed to the defendant from the actual killer or perpetrator. [Citation.] Thus, the factual basis for defendant's guilty plea, though admitting a specific intent to kill, did not demonstrate as a matter of law that he was not convicted, or could not have been convicted, under the natural and probable consequences doctrine." (*Ibid.*) The court further noted it was "possible a principal or an aider and abettor was charged separately—outside the record of conviction—or could not be charged because, for example, the principal or aider and abettor had died, or the

6

prosecution for whatever reason decided not to charge anybody else for the crime." (*Ibid.*)

## VIII.

### THE EVIDENTIARY HEARING ON REMAND

On remand, the trial court held an evidentiary hearing.

#### A. *The Victim's Testimony*

M.E. testified someone pointed a gun at him, but he could not recall the person's face. He generally claimed to not remember any details about the incident or his statements to the police.

#### B. *Defendant's Testimony*

Defendant denied being the shooter or at the scene of the shooting. He also noted he was charged in another case around the same time. When asked why he pleaded guilty in the instant case, he claimed it was "because . . . it was the only offer [he] was given" "[s]o it was either sign that or go to trial on both of [the cases]" and he "didn't want to risk getting two life sentences, or one life sentence, when [he] could just sign it and have a date." Defendant further acknowledged he was aware of the preliminary hearing proceedings, including the prosecution's theory that he was the sole shooter.

#### C. *Detective Rivas' Testimony*

Detective Rivas next testified that M.E. reported he was shot by someone who M.E. believed was a member of the F-Troop gang. Detective Rivas further testified he showed "multiple photographic lineups" to M.E. who identified defendant as the shooter. He also generally recounted M.E.'s statements made during the police investigations.

During cross-examination, defendant's attorney probed potential weaknesses in the photographic lineup in an attempt to undermine the validity of the process and M.E.'s identification of defendant.

## D. Dr. John Wixted's Testimony

The parties generally disagreed as to whether the issue of the shooter's identity was properly before the court. Defendant claimed it was relevant while the prosecutor disagreed. According to the prosecutor, the evidentiary hearing was not a new trial and did not allow defendant to raise claims of trial error. Given defendant's guilty plea, the prosecutor argued "the issue of identity [was] not squarely before [the] [c]ourt." The court was skeptical as to whether evidence "regarding . . . [the] unreliability of [M.E.'s] identification [of defendant]" was relevant, but it ultimately considered the testimony of Dr. John Wixted, an expert on identification.

Dr. Wixted testified about best practices for a photographic lineup. According to Dr. Wixted, "[e]very photo in the lineup should match the witness's description of the perpetrator." He further recommended "the person who administers the photo lineup, be blind to the identity of the suspect so that the officer doesn't unconsciously steer the witness to pick that suspect."

Dr. Wixted also explained how the identification procedure used by detective Rivas was unreliable. He testified detective Rivas made suggestive comments and questions, which implied he knew the shooter's identity. He concluded: "[T]he memory evidence in this case, properly understood, suggests that [defendant] was not the shooter." In making this assessment, Dr. Wixted recalled that M.E. described the shooter as "skinny" during the first police interview. Dr. Wixted noted the shooter was described as "chunky" a few weeks later, which suggests "memory contamination."

8

*E. Alfonso Ochoa's Testimony*

Defense investigator Alfonso Ochoa testified he contacted M.E. in 2012. According to Ochoa, M.E. told him that he "only picked someone [from the photographic lineup] because that was the only way to get rid of the detectives." M.E. felt "pressured" and said one of the detectives kept pointing to one of the photographs.

*F. Dr. Elizabeth Cauffman's Testimony*

By stipulation, defendant submitted Dr. Cauffman's testimony about adolescent brain development.

IX.

THE COURT'S DENIAL OF DEFENDANT'S PETITION

At the end of the hearing, the court denied defendant's petition. Although defendant had already served his sentence, the court did not find his testimony to be credible, reasoning he still had an incentive to seek relief from the conviction. The court likewise did not find detective Rivas' testimony to be credible because he had "an agenda in every one of these gang cases."

The court also noted Dr. Wixted pointed out "things that . . . were suggestive about the photo ID," but he did not say the identification was unreliable. Regardless, the court believed M.E.'s identification based on the photographic lineup was unreliable.

The court next emphasized defendant's guilty plea. The court explained: "[I]f a person decides to admit guilt, maybe it's because they're trying to avoid a greater punishment later, or maybe it's because they really are guilty . . . . [¶] I can't, in this situation, in this case, say it's one or the other. We have the defendant who testified that it is the other, that it's because he was trying to avoid the greater risk. [¶] But, again, the [c]ourt does not consider him a reliable witness at this point. I have a Tahl form . . .

9

where he stated that he was pleading guilty because he's guilty, and for no other reason . . . . [¶] [H]e said, I am, in fact, guilty, and for no other reason. And I declare under penalty of perjury that I've read, understood, and personally initialed all of the items. Everything in this form is true and correct, and he signs it."

Earlier in the hearing, the court acknowledged defendant's counsel was trying to undermine the reliability of the photographic lineup to establish insufficient evidence that defendant was the actual killer. But the court emphasized defendant admitted under oath that he was the actual shooter. The court quoted the following language in the *Tahl*[4] form: "'I willfully and unlawfully, and with the intent to kill, attempted to murder John Doe, a human being.'" The court further noted defendant admitted he committed the crime for the benefit of F-Troop and "already stated, under oath, when he said that he was waiving his rights, he's entering a guilty plea because he is, in fact, guilty and for no other reason."

Given these facts, the court denied the petition. Defendant filed a timely notice of appeal.

## DISCUSSION

Defendant contends insufficient evidence supports the trial court's holding that he was ineligible for resentencing on his attempted murder conviction. He notes the trial court relied on the change of plea form, but he argues another panel of this court "already held . . . the change of plea form, which tracks the generic definition of attempted murder, was not an admission that [defendant] personally harbored malice." Defendant

---

[4] *In re Tahl* (1969) 1 Cal.3d 122, overruled on other grounds in *Mills v. Municipal Court* (1973) 10 Cal.3d 288, 291.

10

accordingly claims no rational trier of fact could conclude defendant was the shooter based on the change of plea form. For the reasons *post*, defendant's argument misapprehends the nature of the prior appellate opinion and the posture of this proceeding.

## I.

### APPLICABLE LAW AND STANDARD OF REVIEW

"Effective January 1, 2019, the Legislature passed Senate Bill 1437 'to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.'" (*People v. Lewis* (2021) 11 Cal.5th 952, 959.) Effective January 1, 2022, Senate Bill No. 775 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 551, § 2) amended section 1172.6 to expand resentencing eligibility to persons convicted of attempted murder. A defendant convicted of attempted murder is eligible for relief under section 1172.6 only if that conviction was based on the natural and probable consequences doctrine. (*People v. Coley* (2022) 77 Cal.App.5th 539, 548.) Thus, a defendant convicted of attempted murder either as an actual perpetrator or a direct aider and abettor is not eligible for relief. (*People v. Cortes* (2022) 75 Cal.App.5th 198, 204.)

The burden of proof is on the prosecution to prove beyond a reasonable doubt the defendant is ineligible for resentencing. (§ 1172.6, subd. (d)(3).) To determine if a trial court properly denied a section 1172.6 petition after an evidentiary hearing, we review the factual findings for substantial evidence. (*People v. Arnold* (2023) 93 Cal.App.5th 376, 383.) "We view the facts in the light most favorable to the People. In this process, we presume in

11

support of the judgment the existence of every fact that can be reasonably deduced from the evidence, whether direct or circumstantial. [Citations.] We must accept factual inferences in favor of the trial court's ruling." (*People v. Mitchell* (2022) 81 Cal.App.5th 575, 591.)

## II.

### SUFFICIENCY OF THE EVIDENCE

"Attempted murder requires (1) a specific intent to kill and (2) a direct but ineffectual act toward accomplishing the intended killing." (*People v. Mejia* (2012) 211 Cal.App.4th 586, 605.) Unlike murder, attempted murder requires express malice and "cannot be proved based upon a showing of implied malice." (*Ibid.*)

Here, defendant admitted he "willfully + unlawfully + with the intent to kill, attempted to murder John Doe, a human being" "for the benefit of the Fx-Troop gang . . . with the specific intent to promote, further + assist in criminal conduct by Fx-Troop members." Defendant clearly admitted the first element of attempted murder—i.e., a specific intent to kill. Substantial evidence also supports finding that he was the direct perpetrator, which satisfies the second element of attempted murder. It is undisputed one person exited the vehicle associated with F-Troop, asked where M.E. was from, and fired multiple times at M.E. Defendant subsequently pleaded guilty to attempted murder after being charged as the only perpetrator and sitting through a preliminary hearing where the evidence identified him as the sole shooter. It accordingly was reasonable for the trial court to conclude defendant admitted he was the direct perpetrator.

Although the trial court found M.E.'s identification based on the photographic lineup to be unreliable, it also rejected defendant's testimony that he pleaded guilty solely for tactical reasons. Instead, the court credited

12

the admissions contained in the plea. Credibility determinations of this kind are within the province of the trial court. (*People v. Clements* (2022) 75 Cal.App.5th 276, 298.) We are not at liberty to reweigh them on appeal.

Relying on the prior appellate opinion, defendant insists his plea cannot support the trial court's denial of the petition. To the contrary, nothing in the appellate opinion rendered defendant's admissions inadmissible or irrelevant at the evidentiary stage. In remanding for an order to show cause, another panel of this court held defendant's plea did not foreclose eligibility for relief at the prima facie stage. (*Contreras I, supra,* G062418.) The court did not resolve what weight the plea admission might carry as evidence at an evidentiary hearing. As the trier of fact, the trial court was entitled to consider this admission as evidence bearing on defendant's role in the offense. Such admissions do not, by themselves, conclusively establish the theory of conviction for purposes of prima facie eligibility, but they remain probative of defendant's mental state and participation in the offense. (*See* 1172.6, subd. (d)(3); *People v. Rodriguez* (2024) 103 Cal.App.5th 451, 456–459; *People v. Garrison* (2021) 73 Cal.App.5th 735, 738.)

We also note it is not our role to determine whether we would have reached the same conclusion. Our role is to determine whether any substantial evidence, viewed in the light most favorable to the ruling, supports the conclusion reached by the trier of fact. (*People v. Clements*, *supra,* 75 Cal.App.5th at p. 298.) It does. Defendant's admission that he personally attempted to murder the victim with intent to kill, when viewed in context, constitutes evidence of direct participation in the charged offense. The existence of other occupants in the vehicle does not compel a contrary

13

conclusion under the applicable standard of review, which requires us to accept reasonable inferences drawn by the trial court in support of its ruling.

## DISPOSITION

The postjudgment order is affirmed.


SANCHEZ, J.

WE CONCUR:


MOORE, ACTING P. J.


DELANEY, J.

14